In re Meggett.

IN RE MEGGETT.

*December 19, 1899 — January 9, 1900.*

Habeas corpus: *Contempt of court: Refusal to comply with order for payment of money: Constitutional law: Due process of law: Imprisonment for debt: Discharge in bankruptcy.*

1. In a suit in equity to foreclose a mortgage the court has jurisdiction to enjoin the defendant from collecting rents, and in case of a breach of that injunction has jurisdiction to punish him for contempt and also to require him to pay back the money wrongfully acquired by him. Whether or not the latter requirement is proper or wise depends on facts which are for trial and consideration by the court, and its decision thereon, while it might constitute error within its jurisdiction, is not reviewable on *habeas corpus.*

2. A court of equity, in such a case, having exercised its jurisdiction and discretion upon the facts presented, and having ordered immediate payment of the money, has inherent power to either punish nonpayment or compel payment by commitment for contempt, and such power is also independently granted or confirmed in express terms by sec. 3479, Stats. 1898, providing for imprisonment on disobedience of an order requiring the payment of money.

3. Where the court has judicially passed on the duty of a party to pay money, the purpose of the legislature, under sec. 3479, Stats. 1898, is to put the mere payment on a different ground from other acts, and to provide thereby for summary coercion of its payment, in addition to proceedings under the provisions in subd. 3, sec. 3477, and sec. 3491 and other sections of such statutes regulating the procedure for imposing punishment.

4. Sec. 3479, Stats. 1898, is summary in itself, assumes that the party will theretofore have had his opportunity to show any cause why the peremptory order of payment should not be made, and authorizes an *ex parte* application for the arrest.

5. Ability to comply with an order to pay money is not a jurisdictional fact necessary to be shown as a condition precedent to the exercise of the power given by sec. 3479, Stats. 1898. *l*

6. Sec. 3479. Stats. 1898, contemplating a prior judicial determination at which the party may be heard, the fact that the final step for enforcement of that determination is without further notice is not a violation of the constitutional prohibition against depriving one of liberty or property without due process of law.

7. Imprisonment for disobedience of an order to pay money, made, not because the defendant owed it, but because, after the court had sequestered it, he had wrongfully diverted it from the court's control, and thereby defied and insulted the court's authority, and incidentally damaged the plaintiff pecuniarily, is not imprisonment for debt.

8. A discharge in bankruptcy proceedings, while it may have discharged the bankrupt from liability to civil suit for money taken originally in defiance of an injunction, has not purged him of his contempt of court in taking it, and in refusing to refund it when ordered to do so.

HABEAS CORPUS. *Petitioner remanded.*
*W. F. Bailey,* for the petitioner.
*H. L. Butler,* for the respondent.
[No briefs on file.]

DODGE, J. This is an original *habeas corpus* sued out by *Alexander Meggett,* and by the return and pleadings brings before us the same record which was considered upon a writ of *certiorari* in *State ex rel. Meggett v. O'Neill,* 104 Wis. 227. The material facts appearing by the record are fully set forth in the report of that case. It was there decided that the complaints made by the relator, whether for error or for want of jurisdiction, were reviewable on appeal, and for that reason this court would not exercise its extraordinary supervisory power upon *certiorari.* The proceeding now before us presents the question of jurisdiction simply. *Wright v. Wright,* 74 Wis. 439; *In re Rosenberg,* 90 Wis. 581. It has already been held that this is a civil contempt proceeding, not outside of, but within, a suit in equity pending in the circuit court for Eau Claire county. As to that situation, an accurate definition of the question presented is given in *In re Rosenberg, supra,* as follows: "There is no question that the court had jurisdiction of the cause of action and of the parties. If, then, it had power to make the order of commitment in any supposable circumstances which might

In re Meggett.

arise in the progress of the cause, then the order is valid
until reversed, however erroneous it may be in the par-
ticular circumstance." In this, a suit to foreclose a mort-
gage, the court, of course, had jurisdiction to enjoin defend-
ant from collecting rents, and, in case of breach of that
injunction, had jurisdiction to punish him for contempt, and
also to require him to pay back the money wrongfully ac-
quired by him. Whether or not the latter requirement was
proper or wise might well depend on facts to be ascertained,
such, for example, as were sought to be proved in this case,
namely, that defendant expended part of the money for
repairs, or that he at that time had neither the identical
money so collected nor ability to obtain the amount; but
all such facts were for trial and consideration by the court,
and its decision thereon could, at most, but be error within
its jurisdiction, and would not be reviewable upon *habeas
corpus.* The court having exercised its jurisdiction and its
discretion upon the facts so presented, and having ordered
immediate payment of the money, had it not power to either
punish nonpayment or compel payment by commitment for
contempt? Such power has always been deemed inherent
in courts of equity, as essential to the enforcement of their
decisions. Indeed, it was anciently their only weapon for
enforcing their commands. *Eilenbecker v. Dist. Ct. of Ply-
mouth Co.* 134 U. S. 31, 37; *In re Debs,* 158 U. S. 564, 595.

Independently of the inherent power of a court of equity,
however, our statute grants or confirms such power in ex-
press terms. Sec. 3479, Stats. 1898, provides: "When any
order of the court or a judge shall have been made requir-
ing the payment of costs or any other sum of money and
proof by affidavit shall be made of the personal demand of
such sum of money and of a refusal to pay it the court or
judge may issue a warrant to commit the person so disobey-
ing to prison until such sum and the costs and expenses of
the proceedings shall be paid." To the full and literal effect

of this statute, however, the petitioner urges three objections: first, that it should be read in connection with subd. 3, sec. 3477, and sec. 3491, and thereby have imported into it the conditions that such payment must be within the power of the defendant, and must be one not enforceable by execution; second, that the section, according to its terms, is unconstitutional, as authorizing imprisonment by an *ex parte* order, which is not due process of law; and, third, that it is unconstitutional, as authorizing imprisonment for debt.

1. As to the first of these positions, namely, that, because subd. 3, sec. 3477, Stats. 1898, makes punishment by fine or imprisonment for nonpayment of money dependent on whether collection can be enforced by execution, and that because the imprisonment by way of punishment authorized by sec. 3492 is limited to six months, unless the act sought to be enforced is within defendant's power, therefore the authority given by sec. 3479 to imprison until an order to pay money is complied with is subject to the same restrictions, the statutes themselves, on examination, negative any such intent on the part of the lawmakers. Sec. 3479 was enacted at the same time with the others referred to. It would have been wholly unnecessary and meaningless if limited as petitioner claims, for it would give no power not conferred by the others. We think the legislative purpose clear to put the mere payment of money, after the court had judicially passed on the duty of a party to pay it, on a different ground from other acts, and to provide, by sec. 3479, for summary coercion of its payment, in addition to the provisions in other sections regulating the procedure for imposing other punishment. Sec. 3479 is summary in itself, and clearly authorizes an *ex parte* application for the arrest, which is merely the execution of a court of equity; but it is predicated upon a prior adjudication, and assumes that the party will theretofore have had his opportunity to show any cause why the peremptory order of payment should not be

made.   That it is to be enforced according to its letter, at least where it does not infringe rights placed beyond legislative power, has been recognized and acted upon from early days at *nisi prius*, and confirmed whenever the subject has been brought before this court.   *In re Gill*, 20 Wis. 686; *Staples v. Staples*, 87 Wis. 592, 596.

In this connection, counsel strenuously contends that the fact of ability to pay is an essential prerequisite to commitment for nonpayment, and must appear as a jurisdictional fact.   He predicates this contention, not only upon sec. 3491, Stats. 1898, as to which we have expressed our views, but also upon the language of several decisions by this and other courts.   With the possible exception of a California decision, none of the cases goes to the extent claimed.   Many of them lay great stress upon the importance of this fact as one to be considered by the trial court, the ignoring of which will constitute error, and this view is fully set forth in some of our own decisions.   *Wright v. Wright*, 74 Wis. 439, 443; *Warren v. Rosenberg*, 94 Wis. 523.   But the jurisdictional character of such fact is denied expressly in *Wright v. Wright* and *Staples v. Staples*, *supra*, and impliedly in *Warren v. Rosenberg*, *supra*.   These decisions, and the practice for so many years, have at least given our own statute a construction contrary to petitioner's contentions, and established the proposition that ability to comply with an order to pay money is not a jurisdictional fact, necessary to be shown as a condition precedent to the exercise of the power given by sec. 3479, however cogent it may be as a fact for judicial consideration in deciding whether that power should be exercised in a given case.   Indeed, the opportunity is still open to the petitioner to urge the fact of honest and good-faith inability to pay the sum ordered.   If such fact were established to exist without fault on his part, there is no doubt the court below would put an end to the imprisonment.   It is, however, noticeable that, al-

though petitioner has twice appealed to the circuit court for discharge, he has somewhat studiously refrained from asserting inability to pay as a ground for such relief, notwithstanding the fact that the court, in overruling the first of those applications, expressly offered to consider one based thereon. His conduct in prosecuting proceedings probably costing him much more than the amount involved, and the result of which, if successful, would leave him still in contempt, and guilty of withholding money wrongfully acquired, does not tend to arouse confidence in the good faith of the suggestion in this court of his inability to pay the comparatively small sum ordered, nor in his desire to purge himself of the contempt of which he has been adjudged guilty.

2. Petitioner urges that this section authorizes deprivation of liberty *ex parte*, and therefore without due process of law. As said above, we think the statute clearly contemplates a prior judicial determination, at which a defendant may be heard; and, if so, the fact that the final step for enforcement of that determination is without further notice is not a disobedience of the United States constitutional prohibition against depriving one of liberty or property without due process of law. If that were so, every *ex parte* issue and levy of an execution, whether against person or property of the judgment debtor, would be prohibited. It is enough that one be given an opportunity to be heard as to whether there shall pass against him an adjudication which may, by statute, be executed by seizure of him or his property, especially if a right of appeal is also accorded him. In *Spencer v. Merchant*, 125 U. S. 345, 355, speaking of tax laws, it is said: "If the legislature provides for notice to, and hearing of, each proprietor, *at some stage of the proceedings*, upon the question what proportion of the tax shall be assessed upon his land, there is no taking of his property without due process of law." See, also, *Hurtado v. California*, 110 U. S. 516; *Ro Bards v. Lamb*, 127 U. S. 58; *Palmer v. Mc-*

---

In re Meggett.

---

*Mahon,* 133 U. S. 660, 669; *Caldwell v. Texas,* 137 U. S. 692, 697; *Rowan v. State,* 30 Wis. 129, 145; *State ex rel. Milwaukee v. Newman,* 96 Wis. 258, 273.

It is not necessary, however, to consider whether, in some supposable case, as if the order to pay were made also *ex parte,* a literal enforcement of this statute might fall within the constitutional inhibition; for in the case at bar the petitioner had the fullest opportunity for hearing, and availed himself of it. He offered evidence by affidavit, and was granted by the court the privilege of calling witnesses to testify orally. His evidence was addressed to all of the excuses he now suggests why he should not have been ordered to pay this money, at the peril of punishment if he refused. The court passed upon that evidence and those considerations, and petitioner has not seen fit to appeal from its decision. Certainly, he has not suffered for opportunity to be heard, and cannot complain that there has not been, as to him, due process of law.

3. It is not inconceivable, though very improbable, that, under the forms authorized by sec. 3479, Stats. 1898, a party might be imprisoned for a contract debt alone. Should such a case arise, such debtor need have no apprehension that his wrongs will not be discovered and righted, if properly brought to the attention of this court. *In re Blair,* 4 Wis. 522, 535. But we have not that case before us now. It does not follow, necessarily, because a party owes a debt, and is imprisoned until he pays the same sum of money, that he is imprisoned for a debt; not more than it followed, because Debs was imprisoned for doing an act which was a crime, that he was being imprisoned for a crime without trial by jury (*In re Debs,* 158 U. S. 564; *Eilenbecker v. Dist. Ct. of Plymouth Co.* 134 U. S. 31); nor more than it follows, because one is imprisoned upon an execution against the body under a judgment for conversion or embezzlement, that he is imprisoned for debt, although he may be indebted on

implied contract for the property converted or the money embezzled.  A statute is not void merely because its words may be tortured to accomplish an unconstitutional result, but merely ineffectual to support that result, and valid otherwise.

In the instant case, it is somewhat difficult to discover that any contract debt exists.  The money collected by *Meggett* did not then belong to the plaintiff in the foreclosure suit, and whence would arise any implied promise on the former's part to pay it to the latter is not easy to define.  An unlawful taking and conversion of the money received by petitioner in defiance of the court's injunction more nearly defines the cause of action that might exist against him.  But whether a debt exists or not is quite immaterial.  The imprisonment is not for the debt, but for disobedience of an order to pay money, made, not because he owed it, but because, after the court had sequestered it after it was properly *in custodia legis*, he had wrongfully diverted it from the court's control.  The order was merely to return that which petitioner ought never to have taken, and in taking which he defied and insulted the court's authority, and incidentally damaged the plaintiff pecuniarily.  This is not imprisonment for debt. It is the exercise of the contempt power inherent in courts of equity to re-establish a *status quo* wrongfully disturbed. The punishment inflicted, even in civil contempts, where indemnity to another party is the dominant purpose, nevertheless rests upon the power of the court to vindicate its own authority, and to punish for defiance thereof, but to adjust that punishment so as to protect or enforce private rights. *In re Milburn,* 59 Wis. 34.

We conclude, therefore, that no good reason exists why sec. 3479, Stats. 1898, should not, in the present case, be accorded full force and effect, according to its terms, to empower the circuit court to make the order of commitment complained of, and that such order was within the jurisdic-

In re Meggett.

tion of that court, and cannot be questioned in this proceeding.

The petitioner further urges that, although lawfully committed, he has since been discharged from his debts in a bankruptcy proceeding, and that he no longer owes this money. As we have already pointed out, he is not imprisoned for a debt, but for a contempt of court. If he did owe this money, it would be a fact apart from and independent of his contempt in not complying with the order to pay it. The order of the bankruptcy court may or may not have discharged him from liability to civil suit for this money, but it has not purged him of his contempt of the circuit court in taking it in defiance of an injunction originally, and in refusing to refund it when ordered so to do. *Spalding v. New York ex rel. Backus,* 4 How. 21; *State ex rel. Warfield v. Becht,* 23 Minn. 411; *In re Milburn, supra.* Apparently the United States district court in bankruptcy has already adjudged that petitioner's liability for the money collected by him is not a debt affected by the bankruptcy proceedings. But, as the proceedings are somewhat ambiguous, we have not taken such adjudication into consideration, deeming it unnecessary.

*By the Court.*—The petitioner, *Alexander Meggett,* is hereby remanded to the custody of the sheriff of Eau Claire county.