BURBACH, by guardian *ad litem,* Respondent, vs. MILWAU-
KEE ELECTRIC RAILWAY & LIGHT COMPANY, Appellant.

*October 1—October 20, 1903.*

*Guardians* ad litem: *Liability for costs: Enforcement: Constitu-
tional law: Imprisonment for debt: Equal protection of laws:
Form of judgment.*

1. Sec. 2931, Stats. 1898, providing that "when costs are adjudged
   against an infant plaintiff" his guardian *ad litem* "shall be
   responsible therefor, and payment may be enforced by attach-
   ment," might be sustained as to the guardian's liability, even if
   the provision as to enforcing payment were unconstitutional.
2. The "attachment" referred to in said sec. 2931 is not a *capias
   ad satisfaciendum,* but merely the ordinary process by which
   one is brought before the court to answer for an alleged con-
   tempt, and the section does not, therefore, authorize imprison-
   ment for debt in violation of sec. 16, art. I, Const.
3. Guardians *ad litem* are so distinguished from executors, trus-
   tees, or other persons prosecuting actions in a fiduciary ca-
   pacity, that the legislature may properly classify them sep-
   arately in respect to their liability for costs, and in so doing
   does not deny to them the equal protection of the laws.
4. When costs are adjudged against an infant plaintiff, the liabil-
   ity of the guardian *ad litem* therefor results from the express
   provisions of sec. 2931, Stats. 1898, and need not be declared
   in the judgment; which should be in the ordinary form.

APPEAL from a judgment of the superior court of Milwau-
kee county: J. C. LUDWIG, Judge. *Modified and affirmed.*

Action for personal injuries, in which the jury found
plaintiff guilty of contributory negligence. Upon such ver-
dict, on motion for defendant, order for judgment was made
directing judgment for costs against the plaintiff, *Peter Bur-
bach,* and ordering "that said judgment may be collected of
said guardian *ad litem,* Charles Mueller, and execution
thereon may issue against the said Charles Mueller." There-
after, and before judgment, upon plaintiff's motion, the court
modified such order "by vacating, setting aside, and striking
out that provision of the said order which directs that the

judgment in the above-entitled action may be collected of Charles Mueller, the above-named guardian *ad litem,* and inserting in lieu thereof the direction that said judgment shall be collected from the estate of the above-named infant, *Peter Burbach,* solely," to which order the defendant duly excepted. Thereupon judgment was rendered dismissing the action, adjudging recovery by the defendant of $37.40 costs, and ordering and adjudging "that this judgment shall be collected solely from the estate of said infant, *Peter Burbach."* From that judgment, and the whole and every part thereof, defendant appeals.

For the appellant the cause was submitted on the brief of *Spooner & Rosecrantz.*

For the respondent there was a brief by *Cummings, Hayes & Thiel,* and oral argument by *W. F. Thiel.*

DODGE, J. Since 1849, at least, it has been the declared legislative policy of the state that one who, as next friend or guardian *ad litem,* lends himself to the bringing of a suit by an infant plaintiff, shall be responsible for any costs adjudged against such plaintiff. Sec. 29, ch. 90, R. S. 1849, was adopted directly from New York, where it had been enacted in 1829, and declared this policy. In 1856, in the adoption of the Code also from New York, was enacted sec. 226, ch. 120, Laws of 1856, identical in words with our present sec. 2931, Stats. 1898, preserving the declaration that such guardian shall be responsible for costs adjudged against the plaintiff, and merely adding, "and payment may be enforced by attachment." This policy, standing thus unassailed for half a century, has, by the judgment of the superior court, been set at naught.

Of the grounds of this decision we are not fully informed. The most strenuous contention of respondent's counsel is, however, that sec. 2931 is unconstitutional, because the provision for enforcement of payment of costs by attachment is

Burbach v. Milwaukee E. R. & L. Co. 119 Wis. 384.

in disobedience of sec. 16, art. I, Const., prohibiting imprisonment for a debt arising out of or founded on contract, expressed or implied. Even if this position were conceded, the conclusion of the court below would seem a pretty complete *non sequitur*. The substantial enactment of the legislature is that the guardian *ad litem* shall be responsible for costs, and no reason is apparent why this may not stand, although the legislature may have authorized an unconstitutional method of enforcing that responsibility. It is a fundamental canon of statutory and constitutional discussion that a statute will be sustained as far as possible, eliminating any unconstitutional provisions thereof, unless it clearly appears that the latter were so integral to the whole purpose of the legislation that one part cannot stand without the other. *McGillivray v. Joint School Dist.* 112 Wis. 354, 359, 88 N. W. 310. That surely cannot appear here, for during the period at least from 1849 to 1856 the provision for the liability of the next friend did stand, with no specific direction as to how it was to be enforced, except as contained in other general provisions regulating the power and proceedings of courts. On the contrary, it must be apparent on a moment's consideration that such severance of the statute of 1856 is entirely possible, so that the court can and ought to sustain the statutory behest that the guardian *ad litem* be liable, even though it could not sustain the further provision that such liability be enforced by attachment.

But is the legislature restrained from this latter provision by the constitutional prohibition against imprisonment for debt? In discussing this same constitutional prohibition (*In re Meggett,* 105 Wis. 291, 297, 81 N. W. 419, 422), we said:

"It does not follow, necessarily, because a party owes a debt, and is imprisoned until he pays the same sum of money, that he is imprisoned for a debt; not more than it followed because Debs was imprisoned for doing an act which was a crime that he was being imprisoned for a crime without trial by jury (*In re Debs,* 158 U. S. 564, 15 Sup. Ct. 900; *Eilen-*

*becker v. Dist. Ct. of Plymouth Co.* 134 U. S. 31, 10 Sup. Ct. 424); nor more than it follows because one is imprisoned upon an execution against the body under a judgment for conversion or embezzlement that he is imprisoned for debt, although he may be indebted on implied contract for the property converted or the money embezzled."

It is under that principle that this and other courts have always recognized that the constitutional prohibition against imprisonment for contract debt did not take away the comprehensive and inherent powers of the courts to protect themselves and parties before them against wilful disobedience of their orders, upon the theory that such disobedience constituted a contempt of the court's authority. *In re Meggett, supra.*

But, indeed, it is not contended that, if an attachment against a recalcitrant guardian *ad litem,* who fails to pay the costs for which the statute makes him liable, is a mere exercise of the contempt power of the court, it is forbidden by our constitution. The respondent rests upon the contention that the statute attempts to confer an absolute power of imprisonment by process substantially identical with the common-law writ of *capias ad satisfaciendum,* and founds this view upon *Grantman v. Thrall,* 31 How. Pr. 464, and *Granholm v. Sweigle,* 3 N. D. 476, 57 N. W. 509, which seem to offer some support for it. Thus, in *Grantman v. Thrall* it was said by the general term of the supreme court of New York, in 1866, apparently without much consideration, that the words "payment thereof may be enforced by attachment" mean "a process in the nature of *ca. sa.* admits of no doubt," from which it was argued that the attachment mentioned in the statute was not a preliminary process to bring a party before court to show cause why he should not be punished by imprisonment as for contempt, but that the court was required to issue its absolute writ *ca. sa.* for his imprisonment until payment of the sum for which he was so liable. Upon the authority of this case the supreme court of North Dakota, dealing with a

statute identical to both that in New York and our own, and with a writ commanding absolutely arrest and imprisonment till the judgment was paid, held that the constitutional prohibition against imprisonment for debt was infringed. It seems clear to us that the premise upon which both of these courts proceeded was an erroneous one. The *Grantman Case* is quite distinctly overruled on this point in the same court by subsequent cases. *Morrison v. Lester,* 11 Hun, 618; *S. C.* 15 Hun, 538; *Schoen v. Schlessinger,* 57 How. Pr. 490; *Miller v. Woodhead,* 17 N. Y. Civ. Proc. 102, 5 N. Y. Supp. 88—in which it is held that the process of attachment authorized by the statute is the ordinary one long and well known as the mesne process by which one is brought before the court to answer for an alleged contempt, and upon which the court investigates and decides the fact of contempt and exercises its discretion as to the further steps to be taken by way of punishment or of coercing obedience to its former precept, and that it is error for a court to substitute in lieu thereof its absolute process *capias ad satisfaciendum,* commanding a sheriff to take and imprison a debtor until he makes satisfaction.

Independently of the direct authority in New York upon the question, we cannot seriously doubt that the word "attachment" is used in our statute in its correct signification, and that it authorizes what is described by Bouvier (1 Dict. Rawle's Revision, 187) as "a writ issued by a court of record, commanding the sheriff to bring before it a person who has been guilty of contempt of court, either in neglect or abuse of its process or of subordinate powers. 3 Blackstone, Comm. 280; 4 Id. 283." The word "attachment" was by no means novel in our statutes at the time of the enactment of the Code in 1856. Many illustrations of its use might be pointed out, but one specially germane to the subject now in hand is presented by the statutes of 1849 on the subject of contempt (subd. 8, sec. 1, ch. 115, R. S. 1849), authorizing punish-

ment by fine and imprisonment in "all other cases where attachments and proceedings as for contempts have been usually adopted and practiced in courts of record, to enforce the civil remedies of any party or to protect the rights of any such party." This is specially applicable, for under an exactly similar statute the courts of New York had been accustomed to enforce the liability of the next friend for costs by attachment prior to the adoption of the Code, which expressly authorized it for that purpose (*Wice v. Commercial F. Ins. Co.* 8 Daly, 70; *Miller v. Woodhead,* 17 N. Y. Civ. Proc. 102, 105, 5 N. Y. Supp. 88), and such was the recognized practice. 1 Tidd's Practice, 100; 2 Burrill's Practice (2d ed.) 81; *Slaughter v. Talbot,* Barnes, 128; *S. C.* Willes, 190. The same significance has also been given by this court to identical language in what is now sec. 2933, Stats. 1898, making an assignee liable for costs and subject to attachment to enforce payment, in *De Witt v. Perkins,* 25 Wis. 438, where the court, instead of attempting to issue its common-law writ for the imprisonment of an assignee until he satisfies the judgment, commanded him to appear and show cause why he should not be required to make payment; evidently considering the whole procedure as identical with that upon other charges of contempt. Contempt proceedings are especially appropriate to control of guardians *ad litem,* for they are officers of the court and subject to its commands. *Richardson v. Tyson,* 110 Wis. 572, 86 N. W. 250; subd. 1, sec. 3477, Stats. 1898. Again, they of course are not subject to execution, since they are not parties to the action and no judgment can properly be entered against them. Thus they fall within the class described in subd. 3, sec. 3477, subject to punishment as for contempt for nonpayment of money. The procedure is carefully regulated so as to ensure due notice and hearing before any order for imprisonment passes. Secs. 3480 *et seq.,* Stats. 1898.

From all these considerations, the conclusion is to our

minds irresistible that sec. 2931 authorizes nothing but the exercise of the inherent power of the courts against contempts, and in no wise infringes upon the immunity from imprisonment for debt guarantied by our constitution.

2. Another suggestion is made by respondent, that guardians *ad litem* are by this statute denied the equal protection of the laws, for that they are subjected to burdens not resting on other parties plaintiff nor on other fiduciaries, such as executors, administrators, or trustees.   They are, however, so distinguished from all such others that we cannot doubt the power of the legislature to classify them separately.   They are not parties to the suits they bring, nor subject to entry of judgment directly against them, and yet behind the shelter of the name of a minor, perhaps irresponsible, they have sufficient control to harass the defendant and absorb the attention of the court.   If they do so without proper grounds, why should they not be liable at least for costs, like any other plaintiff?   Again, they differ from all the other fiduciaries mentioned in that they need neither hold nor control any property of the beneficiary for whom they sue, while the very existence of an executor or trustee presupposes property in his hands out of which can be satisfied the costs of the suit he brings, if he acts for the welfare of his beneficiary.   This distinction entirely justifies the provision of sec. 2932, Stats. 1898, that judgments for costs against such trustees shall be collected only out of the estate in their hands, but for bad faith, and the contrary provision that guardians *ad litem* shall be responsible personally to the defendant.   Such guardian, if he acts in good faith and for the benefit of the minor, is, of course, entitled to be reimbursed such costs, in common with other necessary expenses, out of the estate of the minor, if he has any.   *Tyson v. Richardson,* 103 Wis. 397, 79 N. W. 439.

We conclude, therefore, that no reason is suggested why sec. 2931, Stats. 1898, is not within the just powers of the

legislature, and that it should be given effect according to its terms. Clearly, the decision of the trial court, as embodied in the judgment appealed from, denied such effect to that statute, and was erroneous.

A further misconception, shared apparently by the court below and the counsel upon both sides, was that the judgment to be entered needed to expressly pass on the question of liability of the guardian *ad litem*. The true view on this subject, as fully illustrated by the New York decisions—albeit practice decisions, but which we deem founded on reason— is that the judgment for costs in the case of an infant plaintiff should be, in terms, against the plaintiff, as in any other case. Whether he may or may not have property within reach of ordinary execution is not significant. *Schoen v. Schlessinger,* 57 How. Pr. 490. The minor is the plaintiff, and, when he fails to recover, judgment for costs in favor of the defendant and against him is warranted by sec. 2920, Stats. 1898, in the same form as if he were not a minor. Sec. 2931, Stats. 1898, recognizes this by imposing liability upon the guardian "when costs *are adjudged* against an infant plaintiff." The liability of the guardian rests not upon the form of the judgment, but upon the express provision of the statute. It results that the judgment in this case should have followed the ordinary form that the defendant do have and recover from the plaintiff a specified sum of costs, and that the interpolation therein of the provision that they should be enforceable only against the estate of the minor was erroneous.

*By the Court.*—The judgment appealed from is modified by striking therefrom the paragraph: "And it is further ordered and adjudged that this judgment shall be collected solely from the estate of the said infant, *Peter Burbach,*" and, as so modified, is affirmed. Appellant to recover costs in this court.