## STATE v. HERBERT WIEBKE.[1]

December 22, 1922.

No. 23,069.

**Verdict sustained by evidence.**
    1. The evidence sufficiently sustains the verdict that defendant was the father of the illegitimate child of the prosecuting witness, an unmarried woman.

**Rulings of court sustained.**
    2. There were no errors in the rulings on the trial.

**New trial not warranted.**
    3. The alleged misconduct of counsel was not of a character to justify a new trial.

[1]Reported in 191 N. W. 249.

**Same—inadvertent error in charge.**

4. The charge of the court was in the main correct and clear, and a slight verbal defect to which no attention was called, when at the close the court inquired of counsel whether any errors were inadvertently made, does not warrant a new trial.

**Fees of medical expert.**

5. It was within the trial court's discretion to allow expert fees for a physician who in part of his testimony was called upon to give his opinion as a medical expert.

**Assignment of error.**

6. No assignment of error questions the amount of the judgment in favor of the mother.

**Construction of 1921 Act.**

7. No change was made by chapter 489, Laws 1921, in section 3218, G. S. 1913, as left by the amendment of chapter 210, Laws 1917, except as to procedure and remedy. No additional burden was laid upon the father of a bastard.

**Costs allowed to county.**

8. The recovery of costs was properly awarded to the county where the trial was instituted.

**Imprisonment for costs not warranted by statute.**

9. The statute does not authorize the enforcement of the payment of costs by imprisonment as was done by the judgment in this case.

Prosecution in bastardy, changed by consent of parties and order of court from Houston to Fillmore county. The case was tried before Meighen, J., and a jury which found defendant guilty. Defendant's motion for a new trial was denied. From the judgment entered on the verdict and from an order of commitment upon his failure to pay the costs of prosecution, defendant appealed. Modified and affirmed.

*Gray & Thompson* and *William S. Hart*, for appellant.

*Duxbury & Duxbury*, for respondent.

*Clifford L. Hilton*, Attorney General, and *Albert F. Pratt*, Assistant Attorney General, filed a brief as amici curiae.

HOLT, J.

Defendant was found guilty in a bastardy proceeding, and he appeals from the judgment.

Alma Wiemerslage, an unmarried woman, gave birth to a child October 14, 1918. She charged defendant with being its father, claiming that the first illicit relations with him occurred shortly after the middle of February, 1918, while she was working for an uncle. Defendant admitted such relations both before and after the birth of the child, but insists that they did not begin until the last part of April, 1918. The medical testimony is conclusive that a child born in the middle of October could live but a few hours, if conceived in April previous. Alma testified that the first time she ever was alone with defendant, Herbert Wiebke, was shortly after the middle of February. They had attended the same church and parochial school and had met at dances previously. On the occasion in February he came to her uncle's home in a Ford touring car, turned around in front of the house and stopped. She went out, and was invited to take a ride. She accepted, went back into the house for her wraps. After a short ride she was brought back. In about a week or so, he returned of an evening and she went out riding again. At this second ride she claims the first act of intercourse took place in the back seat of the car. From this time on he came every week or two, according to her testimony, in the same car, driving up in front of her uncle's home, she going out each time for a ride, and on nearly every occasion sustaining illicit relations. Not until in April did he ever go into her uncle's home, nor till then did any one of the three or four adult inmates thereof ever see or hear of him or his auto. Nor were they or any of them called upon to testify that they had seen defendant or the auto near there or noticed any evidence of an auto having been around, except the uncle and a nurse, and that related solely to the time in April when defendant admitted he was in the house.

The testimony is almost overwhelming that the roads were in such condition that travel by auto was out of the question between February 13 and March 24. The little village of Eitzen was located about midway on the road between the places where Alma and

Herbert lived at that time; he living about 3½ miles north of the village and she a little farther southeast thereof. No witness was called who had seen Herbert in an auto after February 1 and prior to March 24, 1918. He and his brothers, sister, a hired girl and others testified that during that period neither Herbert's Ford nor his brother's Velie was out of the places where stored for the winter on the farm, and that the tires of the Ford were deflated, and so kept until March 24 when they were pumped up, and the car taken out and used. As against this there is some testimony from Alma's two brothers-in-law, that, on two or three occasions during the time in question, autos had been operated near the locality mentioned. The evidence took such a turn that, unless defendant came to the home of Alma's uncle in February, or the first half of March and took her out in a Ford auto, there was no basis for finding him the father of the child. The performances in and with a Ford, according to the verdicts of some juries, have been truly remarkable, but a Ford is not noiseless. It is passing strange that with all the times this Ford drove up to the home of Alma's uncle and turned around, stopped and started in front of the house, with headlights burning, none but Alma knew it was there, and none knew that she went out for rides therein, nor did any one notice the tracks of the machine. However, all these matters and many other indications in the evidence which go to discredit Alma's story, were for the jury and we are not warranted in setting up our judgment as to facts against the verdict of the jury approved by a learned and painstaking trial judge.

Thus entertaining misgivings of the justice of the verdict, we have read the unabridged record and examined the errors assigned in respect to the trial with care to see if a new trial could be granted. Complaints are made as to numerous rulings upon the reception and exclusion of testimony. But we find none upon which to predicate reversible error. In many instances the exclusion of an answer to some question worked no prejudice, for it turns out that the same was subsequently received. For instance, defendant was not permitted to testify what he was told by a doctor consulted as to whether the child could live if conceived in April; but thereafter

the doctor testified to what he told defendant, and defendant did testify that he had no relations with Alma after receiving this information. That the court restricted testimony as to conditions of the roads for autos to a territory within 25 miles of the homes of these parties cannot be called an abuse of discretion. And certainly as to number of witnesses upon this collateral issue, it cannot be successfully claimed that the court was not more than liberal.

Misconduct of counsel for the prosecution is charged. There was the usual uncalled for side talk across the table. The attorneys for both parties offended somewhat in this respect, but we can find nothing of sufficient import to mention. Prior to this trial, the prosecution had, in the opinion of defendant, indulged in rather strong arm methods, which methods, however, could have no bearing on the issue to be tried. But defendant's counsel evidently desired to place these matters before the jury to enlist sympathy for his client. Although the matter was wholly irrelevant and immaterial, the prosecution consented and everything relating to an attempt to force a settlement under duress and the conduct of a prior prosecution went in. Surely, defendant cannot on this appeal urge errors in prior proceedings whether in or out of court, nor complain of things he needlessly laid before the jury.

There was testimony that the child was prematurely born. Such was the opinion of the attending physician based upon certain physical indications present. And, after referring to the normal period of gestation, the court charged:

"It, therefore, may be taken as a matter of law that if in this case you should find from the evidence that the child in question was a fully developed child at its birth, and that the first time Herbert Wiebke had sexual intercourse with the child's mother was not until the month of April, 1918, then you will not convict the defendant of this charge."

"But of course in the case of premature children the period of gestation—that is, the length of time of pregnancy—necessarily varies so greatly that each case must, to a very large extent, be judged by its own particular and peculiar circumstances. In the case at bar here it is for you to say from all the evidence in the

case whether this child was a mature and fully grown child at its birth, or whether it was undeveloped and immature."

Request No. 1. "If you find from the preponderance of the evidence that the first occasion when defendant, Herbert Wiebke, and Alma Wiemerslage were alone or had opportunity of having sexual intercourse was about the middle of April, 1918, as claimed by the defendant, then it would be your duty to find the defendant not guilty and you should return a verdict of not guilty."

It is claimed that the first part of the quotation from the charge was misleading, and, at least, partially took away the force of defendant's request as given in the last paragraph. Defendant placed his first connection with Alma as of April 28, while she maintained that illicit relations started in the latter half of February, and continued thereafter at frequent intervals during the months of March and April. It might have been better to have made no reference to a full grown child on the proposition as to conception in April, but we cannot see that this could mislead the jury in view of the giving of defendant's request No. 1. In the case of State v. Allrick, 61 Minn. 415, 63 N. W. 1085, requests like those of defendant's 1 and 2 were not given and no equivalent instructions. And counsel's silence when, at the conclusion of the charge, the court asked whether there was any inadvertence therein is significant that the use of the words "full grown" was not deemed important or prejudicial. It was appropriate for the court to submit to the jury whether the child was born prematurely, for the argument could well be made that, if it was fully developed, defendant could not have been its father on the testimony of prosecutrix who placed the time of conception not earlier than the latter part of February. The instructions given appear, in the main, full, clear and fair. Request No. 3 was an unnecessary reiteration of No. 1, which was given.

Complaint is made because of the allowance of expert witness' fees for the doctor who attended Alma when the child was born. The doctor did not merely testify to what he observed, but was also called upon to give his opinion as an expert. The allowance of

fees to an expert witness is largely within the discretion of the trial court, and we find no abuse of that discretion here.

After verdict a motion for a new trial was made and denied. Finally the case came before the court to determine the amount defendant should pay for the care and support of the child. Between the trial and this hearing, chapter 489, p. 829, Laws 1921, went into effect. Several objections are made to the procedure and the judgment entered. Under the law as it stood when the action was tried, if the jury found defendant guilty, it should also determine the amount of "all expenses incurred by the county for the lying-in and support of and attendance upon the mother during her sickness, and for the care and support of such child prior to said judgment." By the amendment of 1921 the determination of amounts to be paid was left to the court. In this case, there was no expense for either mother or child incurred by the county, hence there was nothing for the jury to determine when the case was tried. But when judgment was to be entered section 3218, G. S. 1913, insofar as here pertinent, read:

"If he (defendant) is found guilty, or admits the truth of the accusation he shall be adjudged to be the father of such child and thenceforth shall be subject to all the obligations for the care, maintenance and education of such child, and to all the penalties for failure to perform the same, which are or shall be imposed by law upon the father of a legitimate child of like age and capacity. Judgment shall also be entered against him for all expenses incurred by the county for the lying-in and support of and attendance upon the mother during her sickness, and for the care and support of such child prior to said judgment of paternity, the amount of which expenses, if any, shall also be found by the judge, together with the costs of prosecution. * * * The court shall further fix the amount, and order the defendant to pay all expenses necessarily incurred by, or in behalf of, the mother of such child, in connection with her confinement and the care and maintenance of the child prior to judgment."

The last quoted sentence was added to the section in 1921. The first is the same as enacted in 1917, also the second sentence, except

that the duty of determining the expenses incurred by the county was upon the jury in 1917, but was placed upon the court in 1921.

The court determined that the mother had necessarily incurred $925 for the care and maintenance of the child prior to the entry of judgment, being at the rate of $25 per month for 37 months. There is no assignment of error raising the question whether there is evidence to support this amount awarded the mother. Had there been such an assignment it would have been well taken, for there is no evidence that the mother, or any one in her behalf, has paid or incurred anything for the care or support of the child. However, this assignment: "Error pronouncing final judgment Chap. 489, 1921 Session Laws, instead of 1913 statute" raises the point that the court had no authority to award the mother any amount for the past support of the child. Under the common law the father of a bastard child was not legally liable for its support. It is also plain that the first sentence above quoted from section 3218, G. S. 1913, as amended by chapter 210, p. 296, Laws 1917, did not place such liability upon him except for such support as was needed subsequent to an adjudication of paternity. But the second sentence made him also liable for the care and support of the child prior to such adjudication in favor of a county which had incurred expense therefor. This liability in favor of the county was by the amendment of 1921 also given to the mother for like expenses. Thereby no new liability was laid upon defendant. Nor was his burden increased. The statute as it previously stood, and still stands, is based upon the theory that the father of a bastard child should be responsible for its support from birth just as a father of a legitimate child.

This view finds support in the principles stated in State v. Zeitler, 35 Minn. 238, 28 N. W. 501. The amendment of 1921 merely extends a remedy without creating a new liability. The same may be said in respect to the fixing of the amount of liability by the court instead of by the jury, and to the fixing of the sum to be paid at stated intervals for future support, and to whom.

Costs taxed in favor of Houston county for $255.89 were inserted in the judgment containing this provision, which appellant

assails: "If the defendant fails to pay within thirty days from the 15th day of November, 1921, the amount of said money judgment of two hundred fifty-five 89/100 dollars to the said county of Houston, he shall be committed to the county jail of said Houston county, there to remain until he pays the same or is discharged according to law." A judgment for costs and disbursement in a civil action has been held not a debt and the method of enforcing payment thereof by imprisonment has been held not an imprisonment for debt forbidden by section 12, article I of the Constitution. Burbach v. Milwaukee E. R. & L. Co. 119 Wis. 384, 96 N. W. 829. There are decisions to the contrary. Granholm v. Sweigle, 3 N. D. 476, 57 N. W. 509. Following State v. Becht, 23 Minn. 1, and the weight of authority it must be held that orders and judgments for the payment of money in bastardy proceedings which may result in the incarceration of a defendant for failing to comply therewith, do not come within the prohibition of section 12, article I, of the Constitution of imprisonment for debts. See cases cited under Bastardy in note to State v. Yardley, 34 L. R. A. 656, 667; Land v. State, 84 Ark. 199, 105 S. W. 90, 120 Am. St. 25; Ex parte Bridgforth, 77 Miss. 418, 27 South. 622; State v. Morgan, 141 N. C. 726, 53 S. E. 142.

But accepting the principle that a judgment for the payment of money in a bastardy proceeding does not arise out of debt, hence a defendant who fails to pay may be coerced thereto by punishment as for contempt of court, the question remains whether the statutory provisions therefor are valid as to this judgment for costs. In respect to future support and care for the child, the court hears and fixes the amount, and in so doing presumably passes upon a defendant's ability to pay the amount fixed. But as to costs of the proceeding they are taxed by the clerk. These statutes are not designed to punish a defendant. So far as they contain provisions to compel obedience to the orders or judgments of the court they are not intended to use imprisonment, unless the defendant is able to obey. But on this judgment for costs being entered and remaining unpaid for the time named, defendant is jailed without any opportunity to be heard, and must there remain for 90 days before he

may show his inability to pay. Section 3220, G. S. 1913. And if perchance then released, he may again be subjected to the same treatment, and then the statute fixes no time when he may again seek freedom. The drastic remedy prescribed by this statute for the enforcement of the judgments and orders entered thereunder should not be held to include a judgment solely for costs.

It does not seem to us material to defendant whether Houston or Fillmore county should have the costs, nor in which jail he should be confined. The parties stipulated for a change of trial. The child and the mother were in Houston county when the proceeding was instituted, and no impropriety is seen in the judgment of costs to that county.

The cause is remanded with direction to modify the order for judgment and judgment as to costs by striking out the words "he shall be committed to the county jail of said Houston county, there to remain until he pays the same or is discharged according to law."