EVELYN LAWSON v. DONALD McLEOD.[1]

May 12, 1933.

No. 29,458.

*Arthur T. Conley,* for appellant.
*Oscar G. Haugland,* for respondent.

[1]Reported in 248 N. W. 658.

*Harry H. Peterson,* Attorney General, filed a brief as amicus curiae in behalf of the state board of control as trustee of funds payable in proceedings for adjudication of paternity.

*HILTON, Justice.*

Plaintiff appeals from a municipal court judgment dismissing her complaint on the merits with costs and disbursements to the defendant.

On September 23, 1929, pursuant to 1 Mason Minn. St. 1927, § 3265, defendant was adjudged by the district court to be the father of a child born to plaintiff, an unmarried woman, on July 24, 1929. In that judgment the court decreed and ordered:

"That the defendant herein shall henceforth be subject to all the obligations for the care, maintenance and education of such child, and to all the penalties for failure to perform the same which are or shall be imposed by law upon the father of a legitimate child of like age and capacity, and shall, in compliance with the above, pay to the Hennepin County Child Welfare Board, as Trustee and as Agent of the Minnesota State Board of Control, confinement and pre-confinement expenses of the said Evelyn Lawson, amounting to Seventy-five Dollars ($75.00), and, until the further order of the Court herein, shall pay Sixteen Dollars ($16.00) per month from the 24th day of October, 1929, to the said Hennepin County Child Welfare Board, as Trustee and Agent of the Minnesota State Board of Control, for the care, support and education of said child, until such child shall become of the age of sixteen years, unless it shall previously die or be legally adopted."

Had defendant been able to and had he complied with this order, his full financial duty would have been performed. However, after paying to the Hennepin county child welfare board the sum of $30, he failed to make further payments. His default was due to inability to pay caused by lack of employment. On April 2, 1931, the county attorney brought proceedings upon an order to show cause why defendant should not be adjudged in contempt of court. That order is still pending. On July 9, 1931, upon the solicita-

tion of plaintiff, the county attorney made an investigation and informed plaintiff that as soon as defendant obtained employment he would be compelled to pay to the best of his ability, or said order to show cause would be further prosecuted.

Defendant obtained employment and commenced making payments to the Hennepin county child welfare board pursuant to the original order, and also entered into an agreement to pay to the welfare board, in addition to the prescribed periodical $16 payments, the further sum of four dollars per month to apply on all sums unpaid under the original order, such payments to continue until all such unpaid sums were paid. Shortly after this arrangement was entered into, plaintiff commenced this action to recover the amount theretofore paid by her for the support and maintenance of the child, and garnisheed the wages of the defendant.

The complaint alleged an agreement on the part of defendant to repay to plaintiff the money paid by her to the welfare society. The parties stipulated, and the court in effect found:

"That there has been no agreement made expressly in any way by defendant to repay plaintiff either before she made the payments, during the time that she was making them, or after making them; that there has been no agreement by defendant of any kind to make such payments unless the law implies such an agreement from the fact of payment by plaintiff under the circumstances of this case."

Appellant contends that the mother of an illegitimate child may recover from the adjudged father money paid by her for the support and maintenance of such child, the father having failed to make the payments as ordered by the court. If the mother has this right, it must be because it is given to her by statute, as at common law the father of an illegitimate child was not charged with its support. State v. Lindskog, 175 Minn. 533, 221 N. W. 911, 912, and cases cited. The authority cited for the claim made is that portion of 1 Mason Minn. St. 1927, § 3265, reading as follows:

"If the defendant fails to comply with any order of the court, hereinbefore provided for, he may be summarily dealt with as for

contempt of court, and shall likewise be subject to all the penalties for failure to care for and support such child, which are or shall be imposed by law upon the father of a legitimate child of like age and capacity, and in case of such failure to abide any order of the court, the defendant shall be fully liable for the support of such child without reference to such order."

We cannot agree with appellant's view that the last portion of the above quotation authorizes a civil suit such as this one by the mother. We arrive at our conclusion after a thorough examination of all of G. S. 1913, c. 17, and G. S. 1923, c. 17 (bastardy statutes), which include 1 Mason Minn. St. 1927, § 3265, and the legislative history of the latter chapter.

Prior to the passage of L. 1917, p. 296, c. 210, which amended G. S. 1913, c. 17, the statutory provisions then in effect were evidently not proving satisfactory in so far as the protection of the public and the welfare of illegitimate children were concerned. See Report of the Minnesota Child Welfare Commission, 1917; also H. F. No. 1167, Journal of the House, 1917, p. 985, the title of which is:

"A bill for an act to give the state board of control general duties for the protection of defective, illegitimate, dependent, neglected and delinquent children, with authority to act as guardian of children; and to provide for child welfare boards in the several counties of the state to aid in the performance of such duties."

The former statute, G. S. 1913, § 3223, authorizing the mother of an illegitimate child to recover by action any sum of money which ought to have been paid by the father pursuant to a judgment and order, was omitted. This is significant.

L. 1921, p. 829, c. 489, further amended G. S. 1913, c. 17, as amended by L. 1917, p. 296, c. 210 (now a part of 1 Mason Minn. St. 1927, § 3265) and expressly provided:

"The judge of the district court before whom the proceedings are pending shall make and enter an order, directing and requiring the father of such child to pay to the state board of control or the

county child welfare board, if there be one, or the duly appointed guardian of such child such sum of money or its equivalent, as may be proper and adequate for the care, maintenance, and education of such child."

This provision is mandatory. It expressly provides to whom the money is to be paid. Payment to the mother is neither required nor permitted. In State v. Wiebke, 154 Minn. 61, 68, 191 N. W. 249, 251, this court said:

"The amendment of 1921 merely extends a remedy without creating a new liability. The same may be said in respect to the fixing of the amount of liability by the court instead of by the jury, and to the fixing of the sum to be paid at stated intervals for future support, and to whom."

The purpose of the act of 1917 is expressed by § 3225 (d) thereof, 1. Mason Minn. St. 1927, § 3272 (d), and is as follows:

"This chapter shall be liberally construed with a view to affecting its purpose, which is primarily to safeguard the interests of illegitimate children and secure for them the nearest possible approximation to the care, support and education that they would be entitled to receive if born of lawful marriage, which purpose is hereby acknowledged and declared to be the duty of the state; and also to secure from the fathers of such children repayment of public moneys necessarily expended in connection with their birth."

As further indicative of the legislative purpose, it is to be noted that in the 1917 amendment, 1 Mason Minn. St. 1927, § 3272 (a), the state board of control or the duly appointed guardian of the illegitimate child is authorized to make, with the approval of the court, a settlement with the acknowledged father. The mother is given no such right.

The only reference made in the 1917 amendment as to recovery by the mother in a civil action is a provision which is in effect that the mother shall recover of the father all expenses necessarily incurred by her in connection with her confinement, including her suitable maintenance for a specified length of time, and all neces-

sary expenses and doctor's bills in connection with her or said child's sickness. However, by L. 1921, p. 829, c. 489, § 3219 (now 1 Mason Minn. St. 1927, § 3266), an amendment was added thereto reading:

"The provisions of this section shall apply only to such expense or portion thereof as is not otherwise provided for by order of the court."

No claim is made that the judgment of September 23, 1929, did not provide for such expense.

It is manifest that the statutes do not authorize an action such as this by the mother of an illegitimate child. The express provisions thereof clearly indicate a contrary intention.

Judgment affirmed.

