**Renee Lynn BUNGE, petitioner, Appellant,**

v.

**Jeffrey J. ZACHMAN, Respondent.**

**No. C5–97–2058.**

Court of Appeals of Minnesota.

May 12, 1998.

Review Denied July 30, 1998.

Martha Anne Ballou, Ballou Family Law Offices, Minneapolis, Michael Ormond, Ormond Law Offices, Minneapolis, for appellant.

Sarah E. Arendt, St. Anthony, for respondent.

Considered and decided by SHUMAKER, P.J., and HUSPENI and SCHUMACHER, JJ.

## OPINION

SHUMAKER, Judge.

Appellant Renee Lynn Bunge brought a paternity and child support action against respondent Jeffrey J. Zachman. Bunge sought (1) reimbursement of wages she lost during and after the pregnancy, and (2) above-guidelines child support. The district court adjudicated Zachman the father, awarded guidelines child support, and denied Bunge's claim for lost wages. Bunge seeks review of the lost wages and child support decisions.

## FACTS

Bunge and Zachman were never married. Their child was born in September 1995, several months premature. Before the child's birth, Bunge spent approximately three weeks in the hospital on bed-rest restrictions. After he was born, he was hospitalized for approximately four months. During those months, Bunge voluntarily spent four to ten hours each day visiting the child in the hospital. Zachman visited the child in the evenings, after work.

Bunge earns a living by operating her own landscaping business. She was unable to operate it during the three weeks she was on bed-rest and did not operate it for the four months she was visiting the child in the hospital. She claims that under Minn.Stat. § 257.66, subd. 3 (1996), Zachman should reimburse her income losses during those three weeks and four months. Prior to litigation, the parties reached an equitable agreement to split uninsured medical expenses of approximately $5,372, accordingly, medical expenses are not included in Bunge's claim for lost wages. The district court refused to grant Bunge lost wages.

Bunge also sought an upward deviation from the child support guidelines, claiming that the child is medically fragile and that she had to hire a nanny to take care of him at a cost of $817 per month. The district court, in awarding guidelines support, held that Bunge failed to prove that the child's needs were extraordinary. Bunge now appeals.

## ISSUES

1. Did the district court err when it failed to include wages appellant lost before and after the birth of the parties' child?

2. Did the trial court err when it failed to award above guideline child support?

## ANALYSIS

### I.

■ The statute in question in this case is part of the Uniform Parentage Act (UPA), adopted by Minnesota in 1980. 9B *Uniform Laws Annotated* § 15 (1987).[1] The interpretation of the UPA is a question of law which this court reviews de novo. *In re Welfare of C.M.G.*, 516 N.W.2d 555, 558 (Minn.App. 1994). We interpret and construe laws that are uniform with those of other states to effect their general purpose and to make uniform the laws of those states that enact them. Minn.Stat. § 645.22 (1996).

The Minnesota paternity statute reads:

The [paternity] judgment or order may direct the appropriate party to pay all or a proportion of the reasonable *expenses of the mother's pregnancy and confinement* * * *.

Minn.Stat. § 257.66, subd. 3 (emphasis added). Bunge suggests that the district court erred when it failed to interpret section 257.66, subd. 3 to allow her to recover from Zachman wages that she lost while on bedrest and during the child's first four months of life in the hospital.

There is no Minnesota caselaw supporting Bunge's interpretation that a mother's lost wages should be included as "expenses."[2] There are two other UPA states, however, that have construed similar paternity provisions and we look to their interpretations to similarly construe our statute.

Montana approved the UPA on April 29, 1975. 9B *Uniform Laws Annotated* at 287 (1987). The Montana statute, like the UPA's section 15(c), and Minnesota's section 257.66,

subd. 3, states that "the court may direct the father to pay 'the reasonable expenses of the mother's pregnancy and confinement.'" *In re Paternity of W.L.*, 259 Mont. 187, 855 P.2d 521, 523–24 (1993) (quoting Mont.Code Ann. § 40–6–116(3)(c)). In *W.L.*, the Montana Supreme Court held that an unmarried mother was not entitled to compensation from the child's father for lost wages. *Id.* at 524. The court specifically refused to interpret its UPA-based statute to allow "lost wages" to be considered "expenses" of a "mother's pregnancy and confinement." *Id.*

Ohio adopted the UPA on June 29, 1982. 9B *Uniform Laws Annotated* at 287 (1987). The Ohio Court of Appeals has issued three published opinions on this issue. Most recently, the Ohio Court of Appeals held that a father who is not married to a child's mother is only responsible for the maintenance of the child, not the mother. *Gilpen v. Justice*, 85 Ohio App.3d 86, 619 N.E.2d 94, 96 (1993). In addition, Ohio has two earlier cases that specifically deny compensation for lost wages during pregnancy and childbirth. *See Jelen v. Price*, 9 Ohio App.3d 174, 458 N.E.2d 1267, 1270 (1983) (lost wages occasioned by mother during pregnancy and childbirth properly not awarded to mother because paternity statute does not specifically provide for lost wages); *Baugh v. Carver*, 3 Ohio App.3d 139, 444 N.E.2d 58, 62 (1981) (under paternity statute there was no abuse of trial court's discretion when it failed to award mother lost wages occasioned during pregnancy).

Montana, Ohio, and Minnesota all have adopted the UPA's language regarding the reimbursement of a mother's pregnancy and confinement expenses. Both Montana and Ohio treat the lost wages claim as outside of the scope of the statute, and, consequently, outside the scope of the UPA. We agree with Montana and Ohio. Consistent with Montana and Ohio, we hold that if the UPA and Minn.Stat. § 257.66, subd. 3 were meant to allow a mother to recover lost wages, the

---

1. The Uniform Parentage Act section 15(c), reads: "The judgment or order may direct the appropriate party to pay all or a proportion of the reasonable expenses of the mother's pregnancy and confinement * * * ." 9B *Uniform Laws Annotated* § 15 (1987).

2. Bunge's principal legal support is from an unpublished case from a foreign jurisdiction. Because of that case's foreign origin, unique facts, and contrary published caselaw from the same jurisdiction, that case is neither precedential nor persuasive.

language in those provisions would have so indicated. *Cf. Martinco v. Hastings,* 265 Minn. 490, 497, 122 N.W.2d 631, 638 (1963) ("[i]f there is to be a change in the statute, it must come from the legislature, for the courts cannot supply that which the legislature purposely omits or inadvertently overlooks.").

Our decision is also consistent with this state's historical treatment of an unmarried woman's pregnancy "expenses." Predating our adoption of the uniform act, a father of a child born out of wedlock could be held liable for the mother's "lying-in" expenses. *See State v. Sax,* 231 Minn. 1, 3, 42 N.W.2d 680, 682 (1950); *State v. Wiebke,* 154 Minn. 61, 67, 191 N.W. 249, 251 (1922). Lying-in, while never clearly defined in Minnesota caselaw, typically included hospitalization costs that arose in "support of and attendance upon the mother during her sickness." *Wiebke,* 154 Minn. at 67, 191 N.W. at 251 (quoting paternity statute); *see also* 25 *Words and Phrases* 535 (1961) ("lying in" includes costs associated with childbirth, confinement, or the act of bearing a child). We have been unable to find any support to expand the definition of expenses to include wages lost by a woman during or after her pregnancy.

Under *Martinco,* absent any support in UPA states' caselaw or this state's caselaw, any expansion of Minn.Stat. § 257.66, subd. 3 must be provided by the legislature. Accordingly, we conclude that the term "expenses" in section 257.66, subdivision 3 does not include a woman's lost wages. The district court did not err when it denied Bunge's claim for lost wages.

## II.

Bunge also contends that the district court abused its discretion when it failed to award above-guidelines child support.[3] District courts are accorded broad discretion in setting child support. *State v. Hall,* 418 N.W.2d 187, 188 (Minn.App.1988), *review denied* (Minn. May 4, 1988). A district court abuses its discretion if it reaches a "clearly erroneous conclusion that is against logic and the facts on the record." *Id.* (quoting *Moylan v. Moylan,* 384 N.W.2d 859, 864 (Minn. 1986)). There is a presumption that the guidelines will be followed when determining child support; and a party who requests departure from the guidelines should provide evidence that would merit a deviation. *Buntje v. Buntje,* 511 N.W.2d 479, 481 (Minn. App.1994).

The district court determined that the costs associated with the child's care are not extraordinary. As at the district court, Bunge provides no support to this court that the $817 monthly childcare cost is significantly greater than that required of a healthy infant's full-time childcare. Further, Bunge has not provided any evidence as to whether the childcare provider's tasks include extraordinary procedures. It was not an abuse of discretion for the district court to refuse to deviate from the guidelines. *See id.* (where party seeking deviation presents no corroborating evidence to support contention that district court's child support determination was unreasonable, the district court does not abuse its discretion by applying the statutory child support guidelines). We affirm the district court's guidelines child support award.

## DECISION

We interpret Minn.Stat. § 257.66, subd. 3 consistently with similar state statutes based on the Uniform Parentage Act. Accordingly,

---

**3.** Bunge raised a third claim in her brief, though not in her notice of review, that the district court miscalculated childcare expenses. Bunge failed, however, to file a posttrial motion to correct the alleged error. *See Bliss v. Bliss,* 493 N.W.2d 583, 589 (Minn.App.1992) (posttrial motions to permit the trial court to review, reconsider, and clarify its findings in dissolution actions are encouraged), *review denied* (Minn. Feb. 12, 1993). The district court, having all of the parties' income evidence before it, would have been the proper place to seek correction of this error. It is not clear what information the district court

used in its calculation and we will not presume that its calculation was in error. *Custom Farm Servs., Inc. v. Collins,* 306 Minn. 571, 572, 238 N.W.2d 608, 609 (1976). Further, even if the district court miscalculated Zachman's childcare obligation, that mistake would have changed the childcare payment by approximately $10 per month. If this was an error, it was de minimus. *Cf. Wibbens v. Wibbens,* 379 N.W.2d 225, 227 (Minn.App.1985) (holding that a technical error that would provide party with additional $120 was de minimus and did not require remand). For these reasons we do not consider this issue.

a mother is not entitled to obtain reimbursement from her child's father for wages she lost during her pregnancy, and confinement, and time voluntarily spent visiting her hospitalized child. In addition, when a party seeks above-guidelines child support yet fails to provide any supporting evidence, it is not an abuse of the district court's discretion to award guideline support.

**Affirmed.**