THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
EDWIN J. ZIMMER, Appellant.

*Opinion filed February 19, 1909—Rehearing denied April 7, 1909.*

1. ESTOPPEL—*party cannot play fast and loose with the courts.*
A receiver who, on writ of error brought by the defendant in the
receivership proceeding, succeeds in having the writ dismissed up-
on the ground that the order sought to be reviewed, which ap-
proved the receiver's report and discharged him, was interlocutory,
will not be heard to say in a subsequent proceeding that the order
was final and that the trial court had no jurisdiction to set it aside.

2. RECEIVERS—*when a receiver may be committed for contempt
of court.* Where a receiver has wrongfully converted or expended
the money in his hands and is proceeded against, in the cause in
which he was appointed, for contempt of court in failing to com-
ply with an order to pay over the money, his inability to pay,
resulting from the wrongful act, presents no defense to the pro-
ceeding, and he may be committed for contempt notwithstanding
such inability.

3. SAME—*court should not fix term of receiver's commitment
for contempt.* In committing a receiver for contempt in failing to
obey an order to pay over funds the court should not fix the term
of commitment, but he should be committed until such time as he
shall pay over the amount found to be due or until he is otherwise
discharged 'from imprisonment by due process of law.

APPEAL from the Branch Appellate Court for the First
District;—heard in that court on appeal from the Circuit
Court of Cook county; the Hon. THOMAS G. WINDES,
Judge, presiding.

This is an appeal by Edwin J. Zimmer from a judgment
of the Appellate Court for the First District affirming a de-
cree of the circuit court of Cook county committing him to
the county jail of that county for contempt of court.

It appears from the record that on July 1, 1902, George
E. Kropf filed a bill in said court averring that a co-partner-
ship existed between himself and John H. Dalton for the
purpose of selling an artificial ear-drum; that Dalton had
been guilty of misconduct and threatened to dispose of the

assets of the partnership. The bill prayed for an accounting and the appointment of a receiver to take charge of the firm's property and to conduct the business. On July 1, 1902, the court entered an order without notice, appointing Edwin J. Zimmer, of Chicago, as receiver of said business upon his filing a bond in the sum of $1000. On the following day Zimmer qualified, and on July 23, 1902, the court entered an order finding that Zimmer had necessarily been compelled to consult a solicitor frequently concerning his conduct of said business, for which he had paid to the solicitor the sum of $300; that Zimmer had devoted a large part of his time to said business and that a reasonable fee for said services was $300, and by said order the court authorized Zimmer to retain the said sums from the money in his hands.

On August 7, 1902, an answer and replication having been filed, the cause was referred to a master to take proof and report the same with his conclusions. On October 17, 1902, the court entered an order from which it appears that the parties to said cause had filed a stipulation, in which they agreed that the receivership be terminated in so far as it applied to the future conduct of said business, and that the receiver be discharged in that respect upon Dalton giving a bond, in the sum of $30,000, to satisfy any decree that might be entered against him in said cause in favor of Kropf. It was ordered that Zimmer be discharged upon the execution of said bond by Dalton, and he was directed to turn over forthwith to Dalton all of the assets in his hands as receiver, excepting moneys and books of account. Zimmer was also directed to pay the sum of $300 out of the funds in his hands to the solicitor for Kropf.

On November 18, 1902, the court entered an order approving the receiver's report that day filed. By that order the court also made an additional allowance of $600 to the receiver for his own compensation and an additional allowance of $600 for the compensation of his solicitor. The

balance on hand shown by that report was $1050. The receiver was directed to retain this on account of said two additional allowances, and he was discharged. Dalton objected to the approval of the report and the discharge of the receiver.

On July 17, 1903, the master filed his report, finding the issues for the defendant and recommending that the receiver be discharged and that the bill be dismissed for want of equity. Upon a hearing on that report on October 30, 1903, the court entered an order overruling the exceptions filed to said report by complainant and approving the report. Thereafter Dalton, acting on the theory that the decree of November 18, 1902, was final in its character, sued out a writ of error from the Appellate Court for the First District. There the writ of error was dismissed on January 15, 1907, that court being of the opinion that the order was interlocutory and not final.

It appears from an order of the court entered on January 16, 1904, that the final report of the receiver had been lost and by that order Zimmer was directed to restore the said report, which he failed to do. Thereupon the court referred the cause again to the master to examine witnesses and ascertain the whereabouts and contents of said report, and on July 17, 1905, the master filed his report, finding, among other things, that on November 18, 1902, Zimmer, as receiver, filed his report, which was on that date approved by the court; that the said report showed total receipts of $4400, and that after paying himself the sum of $300, his solicitor the sum of $300, the solicitor for the complainant the sum of $300 and the expenses of running said business, under the order of the court, the amount remaining in the receiver's hands at the time of the filing of said report was about $1050, and that pursuant to the order of the court the receiver applied the sum of $1050 to the payment of the fees, amounting to $1200, allowed said receiver and his solicitor by the order of November 18, 1902, and that there

238—39

was not sufficient money on hand to pay said fees in full, the deficiency being $150.

On February 26, 1907, upon the motion of Dalton, after notice to Zimmer, the court entered an order which vacated and set aside the order entered on November 18, 1902, approving the receiver's report and discharging him, and Zimmer was ordered to show cause, within five days, why he should not turn over to Dalton all the money and property that came into his hands as receiver. On March 16, 1907, an order was entered by which the court found that prior to November 18, 1902, there came into the hands of Zimmer, as receiver, the sum of $4400, and by said order he was directed to turn over to Dalton, on or before March 21, 1907, the said sum, together with interest thereon at the rate of five per cent per annum from November 18, 1902, to the date of the order,—an aggregate sum of $5309.

Thereafter, on April 29, 1907, upon the motion of Dalton, the court entered an order ruling Zimmer to show cause, on or before May 6, 1907, why he should not be attached for contempt of court for failing to turn over said sum to Dalton, as directed. On May 6, 1907, Zimmer filed his special appearance and answer denying the jurisdiction of the court over him, setting out the various proceedings in the cause and the orders of court entered after his appointment as receiver, up to November 18, 1902. The answer, which was verified, averred, among other things, that the $5309 directed to be paid by Zimmer by the order entered on March 16, 1907, was the same money that was accounted for by him in his report; that, with the exception of the amounts allowed for fees, all the money was disbursed by Zimmer, under the direction of the court and with the consent of Dalton, in the conduct of the business. On May 14, 1907, Zimmer, by an amendment to his answer, averred that he was without property to comply with the order of the court, and on that day the court ordered a writ of attachment to issue against him. On May 31, 1907,

the court permitted Zimmer to file a supplemental answer instanter, by which he averred that he at all times had been, and was then, ready to comply with the orders of the court in so far as it was within his power to do so; that he was without property and offered to submit to an examination in reference to his financial condition. On the same day the court committed him for contempt for failing to obey the order of March 16, 1907, as to the sum of $2450, and in effect found that as to the balance of the sum of $5309 Zimmer had shown cause why he should not be committed for his failure to pay that to Dalton.

It is contended by Zimmer that the Appellate Court erred in affirming the decree of the circuit court. By assignment of cross-error the appellee complains that by the decree of commitment the period of imprisonment was improperly limited to twenty days.

JACOB W. LOEB, and SIGMUND E. LOEB, for appellant.

BENSON LANDON, for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

On November 18, 1902, the receiver filed his report, which was approved and the receiver discharged by an order entered on that day, over the objection of Dalton, the defendant in the suit. Thereafter, on February 26, 1907, the order approving the report and discharging the receiver was vacated, and the question principally discussed in the briefs is whether the court had jurisdiction to enter the order of vacation. Prior to November 18, 1902, the cause had been referred to a master to take proof upon the issues raised by the pleadings, and in July, 1903, the master filed a report sustaining the defendant in every respect and recommending that the bill be dismissed for want of equity. The complainant's exceptions to this report were overruled by the court and the report was approved on October 30, 1903. A decree dismissing the bill has not yet been en-

tered and the original cause is still pending in the circuit court. After the master's report had been so approved Dalton sued out a writ of error from the Appellate Court for the First District for the purpose of obtaining a reversal of the order of November 18, 1902, approving the receiver's report and discharging him. The receiver appeared in that court by the same counsel who represent him now in this court, and succeeded in getting the writ of error dismissed on the ground that the order approving the report and discharging the receiver was interlocutory and not a final order, "and was therefore not appealable nor subject to review upon a writ of error." (*Dalton* v. *Zimmer,* 131 Ill. App. 490.) No appeal or writ of error was prosecuted to review that judgment of dismissal. Appellant now contends that the order was final and appealable, and that this court is not bound by the judgment of the Appellate Court to which we have just referred. Whether we would be bound by that judgment if some person other than the appellant was here complaining that it was erroneous is immaterial. Zimmer having obtained that judgment and the circuit court and Dalton having acted thereon, Zimmer will not now be heard to say that it was erroneous. He cannot so play fast and loose with the courts. After the order of November 18, 1902, was set aside the court undertook to ascertain what the actual condition of Zimmer's account was, his report having been lost. A rule was entered against him to show cause why he should not turn over to Dalton all the money and property that came into his hands. He obtained an extension of the time in which to answer and then paid no further attention to the rule. When the investigation of his lost report was referred to the master he appeared before the master only in response to a subpœna issued for him at the instance of Dalton. He then testified that he was unable to furnish a copy of the report or any receipts or other memorandum from which a statement of the account could be made up. The court then required him

to turn over to Dalton all the money which he had received, ($4400,) together with interest thereon,—an aggregate of $5309. The amount for which he was finally committed was $2450, which amount is arrived at by disregarding the charge originally made for interest and giving Zimmer credit ·for $300 paid to the solicitor of complainant, to apply on his fees, and $1650 paid to his own solicitor and himself on account of solicitor's and receiver's fees,—an aggregate of $1950,—which, deducted from $4400, leaves $2450, which he was finally required to pay.

In defending the rule to show cause why he should not be punished for contempt, Zimmer sought to show that the money had all been disbursed pursuant to orders entered by the court. There were no orders entered authorizing him to disburse sums other than the $1950 above mentioned, in pursuance of which it is shown that he made any payments. An order was entered authorizing him to employ a custodian and stenographer and to pay them out of the assets of the partnership, but that order was vacated five days thereafter and it does not appear that any money was ever paid pursuant thereto, nor does the record disclose facts from which it can be seen that he paid anything on account of the ordinary expenses of carrying on the business. His conclusions on that subject, stated in his answer, avail nothing. Dalton, in fact, made application in August, 1902, for an order on the receiver requiring him to pay the costs of conducting the business for the month of July, 1902, which was resisted, and that application never was disposed of. The course which the receiver pursued indicates a willful disregard of the rights of Dalton. He employed a solicitor in his capacity as receiver, who, while not a partner of the solicitor for the complainant, officed in the same suite of rooms with that solicitor. Upon occasion the receiver's solicitor represented the complainant in proceedings before the master. In so doing the receiver's solicitor was acting for his office associate, who was solicitor for the complain-

ant.  The period intervening the appointment of the receiver and the date upon which the original order of discharge was entered was but four months and seventeen days.  No possible theory can be advanced upon this record that will explain the expenditure of $4400 by the receiver in any legitimate way during that period.  There is nothing here to indicate that the lost report was in any proper way itemized, nor is there any evidence to show the existence of a single item for which the receiver might legitimately have had credit over and above the amount for which the court in this proceeding gave him credit.  The receiver, appointed without notice, gave a bond in the sum of $1000 at the time of his appointment.  Afterward, in August, 1902, he was required, upon the motion of Dalton, to give an additional bond of $3000 within three days.  With this order he never complied.

As a further reason why he should not be punished for contempt the receiver stated that he had no money or other property with which he could make the required payment, and it is argued that the court may not properly punish a receiver for contempt in failing to pay over money with which he is properly chargeable, if he does not, in fact, have the means with which to make the payment.  In the first place, the receiver's inability is not satisfactorily shown by his answer.  That document contains no detailed statement of his affairs, as it should do.  His offer to submit to an examination is not less than an impertinence.  If he decided to interpose a defense of insolvency, the answer should have been accompanied by such a showing as would, *prima facie,* have rendered an examination unnecessary. Had that showing been so made, the court could then, if it saw fit, have permitted counsel for Dalton to interrogate Zimmer with reference to the statements of the answer. We are satisfied, upon this record, that if Zimmer does not have this money it is because he has disbursed it improperly and unlawfully, when, if the law is as he successfully

contended when the case was first in the Appellate Court, he might be called upon to account for it at any time before the cause was finally disposed of in the circuit court. Moreover, where, as here, a receiver has wrongfully converted or expended money in his hands and is proceeded against in the cause in which he was appointed for contempt on account of a failure to comply with an order to pay, inability to pay, resulting from the wrongful act, does not present a defense to the proceeding, and the receiver may be imprisoned for the contempt notwithstanding his inability to pay. *Cartwright's case,* 114 Mass. 230.

The decree appealed from was entered on May 31, 1907. Zimmer was thereby committed to the county jail of Cook county, there to remain charged with said contempt until "the expiration of twenty (20) days from this date, unless he shall sooner pay to John H. Dalton, the defendant in this cause, the said sum of twenty-four hundred and fifty dollars, ($2450,) as required by order of court entered in this cause on March 16, A. D. 1907, or unless he shall be otherwise released and discharged from imprisonment by due process of law."

Appellee has assigned cross-errors, and contends that the court erred in limiting the imprisonment to twenty days, and in this we think it is correct.

The judgment of the Appellate Court and the decree of the circuit court will therefore be modified and the language last above quoted will be expunged from that decree, and in lieu thereof there will be inserted in that decree the words and figures following, to-wit: "He shall pay unto John H. Dalton, the defendant in this cause, the said sum of $2450, as required by order of this court entered in this cause on March 16, 1907, or until he is otherwise discharged from imprisonment by due process of law." As so modified the decree of the circuit court and the judgment of the Appellate Court will be affirmed.

*Decree modified and affirmed.*