(Nos. 17781, 17910, 17911.—)
THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
E. LaMOTHE, Appellant.—THE PEOPLE OF THE STATE
OF ILLINOIS, Appellee, *vs.* ALPHONSE LEFKOW, Appel-
lant.—THE PEOPLE OF THE STATE OF ILLINOIS, Appel-
lee, *vs.* S. A. MAY, Appellant.

*Opinion filed June 23, 1928—Rehearing denied October 13, 1928.*

352

L. A. KAPSA, and CHARLES C. SPENCER, for appellant E. LaMothe; IRENE M. LEFKOW, for appellants Alphonse Lefkow and S. A. May.

LUTHER F. BINKLEY, and WILLIAM E. MOONEY, for appellee.

Mr. COMMISSIONER PARTLOW reported this opinion:

Appellants, E. LaMothe, Alphonse Lefkow and S. A. May, prosecuted separate appeals from an order of the circuit court of Cook county finding them and seven other persons guilty of contempt of court and committing them to the county jail of Cook county on account of their failure to pay over certain trust funds as provided in two decrees entered by the circuit court, and the appeals have been consolidated in this court.

On July 6, 1922, the circuit court of Cook county entered a decree which found that in November, 1916, E. LaMothe, H. Johnson, Joseph I. Lanning, J. W. Lord, S. A. May, Alphonse Lefkow, C. E. Lapham, J. T. Fortin and C. H. McDermott were granted a permit by the superintendent of insurance of the State of Illinois to incorporate the Hercules Insurance Company with a capital stock of $500,000, divided into 10,000 shares of $50 each. On November 11, 1916, the incorporators entered into a written agreement which provided for an executive committee consisting of Lapham, McDermott and Max Spiegel. This committee was given full power during the organization to make all necessary contracts, approve and disapprove bills of over

$50, and do all other acts for the purpose of carrying out the objects of the incorporators. Spiegel was given full power to employ clerical help, engage solicitors and purchase the necessary office supplies. The stock was to be sold for $100 per share, and Spiegel was to receive twenty-five per cent thereof. The remainder of the organization expenses was to be paid from the surplus. LaMothe tendered his resignation to the secretary of the executive committee on January 31, 1918, but no action was taken upon it. Spiegel opened an office in the name of the proposed corporation and proceeded to take subscriptions for the stock at $100 per share. The decree found that $37,800 in subscriptions was paid to Spiegel as the financial agent of the nine incorporators, all of which became a trust fund for the use of the corporation, or for the use of the subscribers in case the corporation was not completed. On June 11, 1918, the organization was abandoned and a bill was filed in the circuit court of Cook county for an accounting. The Chicago Title and Trust Company was appointed receiver, and to it was paid $2314.78, leaving $35,485.22 balance, for which the nine incorporators and Spiegel were held to be personally liable. The decree found that Spiegel diverted from the trust fund to his own use $13,427.40, for which he was liable to the subscribers. Certain subscribers authorized twenty-five per cent of their subscriptions to be used for promotion purposes and other subscribers did not so authorize the use of their money. The decree provided that the receiver be continued, and that the cause be referred to a master to take the evidence and state the account according to certain instructions therein specified.

The master made his findings, and on April 6, 1925, a final decree was entered, which recited part of the findings of the decree of July 6, 1922; that the receiver since January 6, 1922, had made further collections of $3750.57, for which the nine incorporators were entitled to credit; that various subscribers who had made contributions in the sum

of $12,650 had failed to file claims for reimbursement, and the nine incorporators and Spiegel were entitled to a credit in that amount; that it became necessary to appoint a receiver, and the receiver had paid out of the trust funds, under the orders of the court, $4158.31 in administering the receivership, which sum the incorporators should return to the trust fund. The court found that the amount of the trust fund in the hands of the nine incorporators on July 6, 1922, was as follows: Original trust fund, $37,800; receiver's expenses, $4158.31; total trust fund, $41,958.31. From this should be deducted $2314.78 and $3750.57, being the amounts collected by the receiver, and $12,650 due subscribers who had filed no claims, making a total credit of $18,715.35, leaving a balance of $23,242.96, which sum, with interest at five per cent from July 6, 1922, amounting to $3195.91, made a total of $26,438.87, which the incorporators "now have and should be required to turn over to the receiver herein." The decree further found that the parties filing the original bill had been required to employ counsel and had incurred other expenses, amounting in all to $4149.50, for which they should be reimbursed by the incorporators; that sixty-nine claims of subscribers for reimbursement, amounting to $26,150, should be paid, none of whom authorized the use of any part of their subscription for expenses of organization. The incorporators, within ten days, were ordered to pay to the receiver $26,438.87, together with $4149.50 costs and expenses, with interest at five per cent. This decree, on appeal, was affirmed by the Appellate Court and *certiorari* was denied by this court.

On June 19, 1925, a petition was filed in the circuit court which recited the failure of the incorporators to comply with the decree by paying the money, and a rule was entered against them to show cause why they had not complied with the decree. Appellants appeared and filed their answers under oath, in which they set out in detail their reasons for failing to comply with the decree. Each of

them alleged that Spiegel had received all of the money that had been paid by the subscribers to the capital stock, that none of appellants had solicited subscriptions or received any money paid by subscribers, and that each had no property, real or personal, and had no means of raising the money to pay the amount decreed to be due from them. On July 12, 1925, there was a hearing upon the petition and answers, and an order was entered finding that the nine incorporators and Spiegel had willfully neglected and refused to pay to the receiver the trust fund, in open defiance of the order of the court; that each of them was guilty of contempt, and they were committed to the county jail of Cook county for six months unless they purged themselves of the contempt by making the payment of $26,438.87, or until discharged by due process of law. From this order appellants prosecuted an appeal to this court.

As ground for reversal it is urged that the order was in violation of the fourteenth amendment to the Federal constitution and section 2 of article 2 of the State constitution, which prohibit any person from being deprived of life, liberty or property without due process of law; that the order violates section 12 of article 2 of the State constitution, which prohibits imprisonment for debt; that the sworn answer of appellants was sufficient to purge them of contempt; that it was error to adjudge appellants guilty of contempt on account of a failure to turn over money which was not in their possession at the time the decrees were entered and which they were financially unable to pay; that the decrees are inconsistent and contradictory and it was error to base a contempt proceeding thereon; that it was error to find appellants guilty of contempt for failure to pay receiver's costs and expenses included in the trust fund.

Section 12 of article 2 of the constitution provides that "no person shall be imprisoned for debt, unless upon refusal to deliver up his estate for the benefit of his creditors, in such manner as shall be prescribed by law, or in cases

where there is strong presumption of fraud." The power of a court of equity to punish for contempt by imprisonment upon the refusal of a trustee to pay over money actually received and wrongfully withheld is well established. (*Chew's Appeal,* 44 Pa. 247; *In re Meggett,* 105 Wis. 291, 81 N. W. 419.) It is no defense in such a case that the fund has been devoted to other purposes. (*People* v. *Zimmer,* 238 Ill. 607; *Rudd* v. *Rudd,* 184 Ky. 400, 214 S. W. 791; *Jastram* v. *McAuslan,* 29 R. I. 390, 71 Atl. 454; *Wise* v. *Chaney,* 67 Iowa, 73, 29 N. W. 599.) In *People* v. *Zimmer, supra,* it was held that where a receiver has wrongfully converted or expended money in his hands and is proceeded against, in the cause in which he was appointed, for contempt on account of his failure to comply with an order to pay, his inability to pay, resulting from the wrongful act, does not present a defense to the proceeding, and he may be imprisoned for the contempt notwithstanding his inability to pay,—citing *Cartwright's case,* 114 Mass. 230. In the enforcement of this constitutional provision every doubt should be resolved in favor of the liberty of the citizen. No one should be imprisoned for a failure to pay money unless the evidence clearly shows that the party charged has the money within his power to pay, or that he had the money and wrongfully disposed of it. Courts may imprison for willful defiance, but they will not imprison for a failure to comply with a decree where the disobedience is not willful. (*Blake* v. *People,* 80 Ill. 11; *Dinet* v. *People,* 73 id. 183; *O'Callaghan* v. *O'Callaghan,* 69 id. 552.) The mere fact that a court of equity has rendered a decree fixing a money liability does not authorize it to imprison to enforce the payment without regard to the relation of the parties to each other or to the court. (*Goodwillie* v. *Millimann,* 56 Ill. 523.) Where imprisonments have been sustained the decisions are based upon the fact that the party charged actually had the money in his hands or had wrongfully disposed of it. None of them is based upon a constructive

possession of the money because of the party's association with the person who had actually received the money. No man can be legally imprisoned for a failure to pay over money he does not have and never had.

The People insist that the order holding appellants guilty is not an imprisonment for debt as prohibited by section 12 of article 2 of the constitution, for the reason that the decrees of July 6, 1922, and April 6, 1925, judicially determined that appellants and the other incorporators had possession and control of the funds, and they could not dispute this finding in their answer filed in the attachment proceeding. The construction to be placed upon these decrees must be made with reference to the issues which they were intended to determine. If their language is broader than is justified it will be limited by construction so that its effect shall be such, only, as is needed for the purposes of the case which has been made and the issues which have been decided. (*Aloe* v. *Lowe,* 298 Ill. 404; *Vulcan Detinning Co.* v. *St. Clair,* 315 id. 40.) The decree of July 6, 1922, found that divers persons paid to Spiegel $37,800 on account of their subscriptions; that the balance of $35,485.22 not recovered by the receiver was paid to, and certain portions thereof were improperly and unlawfully dissipated by, the nine trustees; that Spiegel, as their agent, diverted and appropriated from the trust fund to his own use $13,427.40, for which he was liable to account. It was ordered, adjudged and decreed that the receiver recover from the nine incorporators and Spiegel the amounts which had been received by them. The decree of April 6, 1925, found that it had been determined by the decree of July 6, 1922, that the total amount of the trust fund paid to the incorporators was $37,800; that the amount of the trust fund on July 6, 1922, was $26,438.87, which the incorporators "now have and should be required to turn over to the receiver herein." These are the only recitals in either decree which even tend to find that the trust fund was received by or that it was at

any time in the hands of any one of appellants. These recitals are not equivalent to a finding that appellants actually had the funds in their hands at the time the decrees were entered. As a matter of fact, the decrees found specifically that Spiegel collected all of the funds and improperly expended $13,427 for his own use. The issue in the case was whether Spiegel and the nine incorporators were liable to account to the subscribers for the amounts which they had paid on their subscriptions to the capital stock, and if they were liable, the amount of their liability. The liability of appellants to account did not depend upon whether they had personally collected the money or whether the money had actually been in their custody. That issue was not presented to the court prior to the time these men were cited for contempt, and it will not be assumed that it was decided in the decrees, which were entered before the issue was presented. The findings in the decrees mean that the incorporators were jointly and severally liable to account for this amount of money. The $4158.31 charged as receiver's expenses of administration was not actually and physically in the hands of appellants, and yet it is included in the item which the court finds was in the hands of the trustees. The same thing is true as to the interest charged. The court did not mean to hold that the trustees actually and physically had in their hands the interest on the balance of the trust fund, but it held merely that they were jointly and severally liable to account for the trust fund, plus interest. To this was added $4149.50 as expenses, which no trustee ever had in his hands. The decrees cannot be construed as holding that the funds were in the hands of appellants.

The sworn answer of appellants to the citation for contempt alleged that after the preliminary steps were taken they had nothing whatever to do with the fund; that they did not receive any of the money paid on stock subscriptions nor did they handle the same nor have they now pos-

session of the trust fund, and they alleged that they were without property or assets with which to replace the trust fund, and they asked to be discharged. The answer of LaMothe alleged that he tendered his resignation as a director in January, 1918; that on April 1, 1918, he entered the army and continued in the service until June, 1919, and was absent from the city of Chicago and the State of Illinois during all of that time, and by reason thereof he was not connected with the management of the fund; that he is a practicing physician and his practice is his only source of income; that his total income from January 1, 1923, to January 1, 1924, was $3982; that his total receipts for 1924 were $3904; that his total receipts for the first six months of 1925 were $1758; that all of said amounts have been spent for the necessary expenses of his business and for living expenses; that he had no money in his possession and that he owned no property of any kind except his office and household furniture, and that he was unable to turn over to the receiver the money specified in the decree or any part thereof. The answers of the other two appellants were equally specific in these regards. The contempt case was heard upon the two decrees and the sworn answers of appellants, which were not disputed in any way. No evidence was offered showing or tending to show that either of appellants had the money or was in any position to raise the fund. Notwithstanding the fact that none of appellants had the trust fund in their possession at any time and their answer showed they were unable to comply with the orders, they were committed to the county jail. The orders were in violation of the constitutional rights of appellants and the court was without authority to enter them.

The orders will be reversed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Orders reversed.*