First National Bank & Trust Co. of Evanston, etc., et al., Plaintiffs-Appellees, v. Dan Desaro, etc., et al., Defendants-Appellants.

Gen. No. 48,902.

First District, First Division.

September 17, 1963.

Samuel S. Cohon, of Chicago, for appellants.

Robert J. Downing and Robert G. Lussier, of Chicago (Raskin and Downing, of counsel), for appellees.

MR. JUSTICE BURMAN delivered the opinion of the court.

This is an appeal from a judgment of the Circuit Court adjudging the defendant, Dan Desaro, guilty of civil contempt for failure to comply with an order for payment of rent and for wilfully damaging the premises.

The facts leading up to the contempt order are as follows:

The defendants, husband and wife, entered into articles of agreement with the plaintiffs on December 20, 1959, for the purchase of a home in Glenview. Upon defendants' failure to make the required payments, the plaintiffs filed a forcible detainer in the Circuit Court and on December 5, 1960, obtained a judgment for possession.

On May 14, 1962, defendants filed a petition in the nature of a writ of audita querela seeking relief and alleging that although the plaintiffs had secured a judgment for possession they did not exercise their right to possession, but instead agreed with defendants to allow them to continue in possession; that the defendants had paid the plaintiffs $400 per month since December 5, 1960, and that not until May 5, 1962, were they served with a writ of restitution; that certain equities were present at this time that were not present when the possession order was entered on December 5, 1960, upon which order the writ was issued. It should be noted that writs of audita querela have been expressly abolished under the Civil Practice Act, Ill Rev Stats 1961, c 110, § 72. All relief heretofore obtainable is now governed by § 72. A petition under this section is the filing of a new action and is subject to the usual rules governing civil cases. Brockmeyer v. Duncan, 18 Ill2d 502, 165 NE2d 294.

On May 29, 1962, the following order was entered from which no appeal was taken:

> "This cause coming on to be heard on defendant's Petition in the Nature of a Writ of Audita Querela filed May 14, 1962, and continued to this date, and the Court being fully advised by counsel for the parties hereto,
>
> "It is hereby ordered, adjudged and decreed that defendant's Petition be continued to June 29, 1962, and that defendants pay to plaintiffs the amount

of $400.00 for May, 1962, and the amount of $400.-
00 for June, 1962, and that said payments be made
in advance and that defendants vacate said prop-
erty on or by June 30, 1962."

The defendants did not pay the rent fixed in the or-
der of May 29th, but did surrender possession of the
premises on the 22nd day of June, 1962, and delivered
the keys to the premises on June 29th in the presence
of the court.

On June 29, 1962, the plaintiffs filed a petition for
a rule to show cause alleging that defendants had
failed to make payments for the months of May and
June, as required by the order of May 29th, and fur-
ther that an inspection of the premises on June 25th
"disclosed that the same had been defaced, marred
and destroyed." An affidavit was attached, setting
forth with particulars the damage complained of.

A hearing was then held and testimony of the par-
ties taken. Plaintiff William A. Rychlik and the Chief
of Police of Glenview testified as to the nature and
extent of the damage which we need not specify here
except to say that the damage was extensive and of a
nature indicating it was done wilfully. The amount
of damage was assessed at $7,000.

The defendant testified that he did not have the
$800 with which to pay the rent as directed and that
was the reason for his nonpayment. He denied that
he, his wife or his son, had anything to do with the
damage of the premises, asserting, "I had no knowl-
edge whatsoever and I am absolutely shocked."

The Court then found defendant Dan Desaro * in
contempt, sentencing him to thirty days in jail unless
defendant restored the property to its original condi-
tion.

---

* Defendants in this action were both husband and wife, but
only the husband was ordered imprisoned.

After the court had reached this finding, further argument of counsel was heard, the end result of which was that defendant agreed to a lie detector examination to determine whether he was telling the truth as to the damage to the property. This was to be in the nature of "a double or nothing gamble." The Court stated that if the results of the test indicated the defendant was truthful in his denial of the damage, the Court would reconsider its finding. If the results were that defendant was not telling the truth the sentence would be increased to sixty days or until restitution had been made.

The examiner's findings were that defendant was not entirely truthful in his denials. Thereupon, the court, after hearing evidence, entered a written order of commitment which recited, among other things, that the defendant failed to pay rent after the court stayed the writ of restitution at defendant's request, stating, "which wilful and contumacious conduct on the part of defendant, Dan Desaro, is in open defiance of the order of the court"; that the evidence established that "the defendants, including Dan Desaro, have wilfully, knowingly and contumaciously refused to comply with the orders and decrees of this court, and that the defendants, including the defendant, Dan Desaro, caused or failed to prevent the causing of the acts, conditions and damages which the court finds took place while the defendants, including the defendant, Dan Desaro, have hindered, impeded and delayed the administration of justice by this court."

The order of commitment directs that the defendant be committed to the common jail of Cook County, Illinois, and

"there to remain charged with the contempt of the Circuit Court of Cook County, Illinois, for a period of sixty days for a period of thirty days unless he

157

shall purge himself of said contempt by delivery to the plaintiffs herein the sum of $800.00 as rent for May and June, 1962, plus the sum of $7,000.00 for damages caused by his wilful and contumacious conduct as aforesaid."

Defendant urges reversal of the contempt order for one or more of the following grounds. First, the order of May 29th is too vague, indefinite and uncertain to support a basis for a contempt finding. Second, damages may not be awarded by the judgment in a forcible entry and detainer case particularly since there was no pleading in the nature of a joint action proceeding seeking action for damages. Thirdly, the order finding defendant in contempt is actually imprisonment for debt in contravention of Section 12 of Article II of the Constitution of the State of Illinois.

■ The defendant was found guilty of contempt of court for two specific acts, namely, his failure to pay the $400 for the months of May and June and for wilfully damaging the property. We will consider first whether his failure to pay the $400 as ordered by the Court could result in a contempt finding. In determining the propriety of orders in enforcement of contempt proceedings, it is necessary that each case be viewed in the light of its own peculiar facts. Wick v. Wick, 19 Ill2d 457, 167 NE2d 207. The facts of this case show that the appellant's only excuse for not paying the $800 as ordered by the Court was that:

Mr. Schub: (Counsel for Desaro) Q. Why did you not pay the $400 for each of these two months at that time, Mr. Desaro?

The Witness: A. Well, I presumed and understood that I had to move, and I didn't have the money. I had to find a place to live.

The Court: That's no excuse.

158

The Witness: And that's all I have.

■ This mere statement of inability to pay is, as was pointed out by the trial judge, "No excuse." The burden is upon the one charged with contempt to prove his inability to comply with the order by definite and explicit evidence. Harrigan v. Stone, 237 Ill App 314, 320. Indeed, it has been stated that a party claiming inability to pay as a defense must submit to the court a detailed statement of his affairs. People v. Zimmer, 238 Ill 607, 614, 87 NE 845. The appellant failed to do any of these things and expects this Court to verify his inability to pay by his mere self-serving statement. As was said by the Court in Harrigan v. Stone, 237 Ill App 314, 325:

> If the decrees of the courts are to rest so lightly upon the shoulders of those against whom they are rendered and if they can be defeated by such excuses as are offered by plaintiff in error then property rights and property interests would soon become insecure.

■ The record shows that the defendants were served with a writ of restitution on May 5, 1962, based upon a judgment for possession that was entered in the same proceeding on December 5, 1960. The defendants by their petition in the nature of a writ of audita querela raised a question as to whether the plaintiffs who voluntarily permitted the defendants to remain in possession abandoned their prior right to execute the writ of restitution and thereby caused the court to lose the jurisdiction to enforce it. The petition of defendants was presented on May 14th and continued to May 29th. At that date, the defendants, rather than questioning the jurisdiction of the court invoked it and apparently received the relief requested. One cannot apply to a court for its assistance without submit-

159

ting to its jurisdiction. Parties cannot waive a lack of jurisdiction of the subject matter, but they may voluntarily submit their persons to the jurisdiction and they may do so by conduct as well as by words. Crandall v. Kraetzer, Fischer & Co., 155 Ill App 496.

 Next, appellant urges that the contempt order violates his constitutional rights since it amounts to an imprisonment for debt. In so thinking the appellant suffers from an error in characterization. This case is not one in which the appellant is being imprisoned for his failure to pay a debt. His imprisonment is rather a result of his attitude of contempt and scorn for the orders of the trial court. The facts before this Court show that the appellant was treated in a most lenient and sympathetic manner when, over the strenuous objections of opposing counsel, he was granted his request for additional time in which to vacate the premises in return for his promise to pay $800. The court ordered defendant to pay the money solely because defendant had, by the petition in the nature of a writ of audita querela, stated he was in fact able to do so. This was the relief requested by defendant. His answer to the cooperation and assistance of the court was a total and unexplained disregard of its order. Defendant asserts he did not understand the order. However, at the hearing below defendant made no contention that he did not understand the order. If a party understands what is required of him under an order he cannot then assert that the order is too vague.

The power to punish for contempt exists merely for the purpose of enabling the court to compel due decorum and respect in its presence and due obedience to its judgments, order and process. 12 American Jurisprudence, Contempt § 48. This Court is satisfied that the actions of defendant as set out above provide suffi-

cient reason for the invocation by the trial court of its powers to punish for contempt.

■ This leads us to that part of the contempt order committing the defendant to the County Jail for sixty days unless he shall purge himself of contempt by the payment of $7,000 for property damages. Courts have no right to deprive individuals of their liberty unless clearly required to do so. Goodwillie v. Millimann, 56 Ill 523. The order of May 29th upon which a rule to show case was entered, ordered the defendant to pay $800 and to vacate the premises before June 30th. The defendant did vacate the premises as ordered. We are not prepared to say that there exists any authority to imprison for contempt of court for damaging property not under the custody of the court. As was said in the case of Universal Credit Co. v. Antonsen, 374 Ill 194, 202, 29 NE2d 96.

> "When property has been replevied, and the case in which the writ issued is pending and undetermined, the property may be regarded as in the custody of the law, and the court has the right to see that it is not interfered with; but here, the court had no jurisdiction over the property. It had never come into the hands or possession of any officer of the court."

In addition it should be noted that the alleged actions of the defendant in damaging the property do not in any way violate the provisions of the May 29th order upon which the rule to show case was based.

We consider the filing of the petition in the nature of a writ of audita querela as the commencement of a new and independent suit in which the petition stands as a complaint. Calkin v. Roberts Park Fire Protection Dist., 402 Ill 579, 84 NE2d 841. Instead of a petition for a rule to show cause the plaintiff should have been permitted to file proper pleadings as in any civil

161

suit and the defendants given an opportunity to reply and be tried by a court or jury on the property damage question.

For the reasons stated the order of the Circuit Court is affirmed in part and reversed in part and the cause is remanded to that court for proceedings consistent with the views expressed in this opinion.

Affirmed in part, reversed in part and remanded.

MURPHY, J, concurs.

ENGLISH, PJ, dissenting:
Plaintiffs filed no pleading of any kind in response to defendant's petition in the nature of a writ of audita querela. The trial court, nevertheless, proceeded with a hearing on the apparent assumption that the sufficiency of the petition had been put in issue as though by motion to dismiss. In any event, the facts set forth in the petition were not contravened, in the trial court or here, by pleading or otherwise, and must, therefore, be considered as true.

The petition alleged that for some 17 months after entry of judgment for possession defendant had continued in the premises under a post-judgment agreement with plaintiffs calling for the payment of $400, or more, per month "on account of the original contract of purchase"; that all payments thus agreed upon had been made when, on May 5, 1962, a writ of restitution was served to enforce the original judgment for possession entered in 1960. Defendant's petition was filed promptly thereafter.

It would be difficult to conceive of a more appropriate application of audita querela than that presented by this petition, which is the Practice Act equivalent of "a common law writ to afford relief against a judgment or execution because of some defense or discharge arising subsequent to the rendition of the

judgment." Di Paola v. Seppala, 336 Ill App 344, 349, 83 NE2d 889. Under remarkably parallel circumstances this court stated in Bolman v. Hardy, 345 Ill App 609, 104 NE2d 325:

> The allegations of the petition (in the nature of a writ of audita querela) in this proceeding must be taken as true. By reason of the occupancy and payment of weekly rental after the order of February 15, 1951, (judgment for possession) the law created a new tenancy. (Sebastian v. Hill, 51 Ill App 272; Sprengel v. Schroeder, 203 Ill App 213); plaintiff recognized defendant as his tenant at a time when he was entitled immediately to evict him from the premises, and by accepting rent for a considerable period thereafter he lost the right to enforce the judgment of restitution previously entered in his favor. Accordingly, the court should have allowed defendant's petition. The order of May 1, 1951 is therefore reversed, and the cause is remanded with instructions to sustain the petition, to quash the writ of restitution, and to enjoin plaintiff from procuring the issuance of another writ in this proceeding.

An order of the kind directed by this court in Bolman was the only one proper in the case at bar. When, in its order of May 29, 1962, the court recognized, as it should have, the post-judgment agreement between the parties, it had no alternative but to quash the writ of restitution, because that writ had been based upon the judgment which, in turn, had been based upon the superseded purchase agreement. Instead, however, the writ was merely stayed for awhile and used as a weapon in the gratuitous program embarked upon by the court to enforce the payment provisions of the new agreement. I say gratuitous because there was not then (nor is there now) any pleading whatsoever

163

seeking a money judgment under that agreement. It seems to me that the trial court and the majority here have thus completely lost track of, or concern for, the sole issue presented by the only pleading in the case.

The Illinois courts have repeatedly held that affirmative relief cannot properly be granted without "a motion, petition or pleading of some kind asking for it." Zelko for use of Oostema v. Homewood Sav. & Loan Ass'n, 20 Ill App2d 481, 156 NE2d 233; Trustees of Schools of Town One v. Chambers, 240 Ill App 295, 306. "It is fundamental that a judgment order must be supported by allegations in the complaint as well as by the evidence." Abbate Bros. Inc. v. City of Chicago, 11 Ill2d 337, 346, 142 NE2d 691; Lewis v. Lewis, 316 Ill 447, 450, 147 NE 411. "This court has said many times, pleadings without proof are of no avail on final hearing and, by the same token, proof without pleadings is useless." Neitzke v. Neitzke, 15 Ill App2d 473, 476, 146 NE2d 708; Consoer, Townsend & Associates v. Addis, 37 Ill App2d 105, 110, 185 NE2d 97.

Compounding the error in the order of May 29, 1962 is the fact, clearly shown by the record, that the direction to pay $800 came at a time when that amount was not yet due. The uncontroverted petition filed on May 14, 1962 stated that all payments were current at that time. By the specific terms of the May 29 order defendant was ordered to make two $400 payments "in advance." This portion of the order amounted to a decree for specific performance of the new agreement, a remedy rarely to be decreed and only upon the making of a very strong showing by affidavit or evidence of unusual circumstances justifying such drastic relief. (Ambassador Foods Corp. v. Montgomery Ward & Co., Inc., 43 Ill App2d 100, 192 NE2d 572.) Here, of course, there was no showing at all.

164

By ordering the payments "in advance" the court thus recognized not only the existence of the new agreement, but also that there had been no default thereunder. Despite this fact, the court, unaccountably, ordered further that the defendant vacate the premises by June 30. The order to vacate was not made dependent upon failure to pay the $800, but in any event, and even though it might have resulted in eviction without any default in payment whatsoever. And the eviction so ordered was apparently to be enforced through execution of the writ of restitution under the old agreement, while payments were to be made under the new one. The result of the May 29 order, as I read it, was that the petitioner, who was clearly entitled to have the writ of restitution quashed, was, instead, ordered to vacate the premises and pay $800 under the new agreement by the terms of which he was then current in his payments. Yet this palpably erroneous result embodied in the order is described by the majority as treatment "in a most lenient and sympathetic manner . . . when he was granted his request for additional time in which to vacate the premises in return for his promise to pay $800." I find nothing in the record indicating that defendant requested "additional time" or that a 30-day stay of the writ was given to him in return for a promise to pay $800. We do not have a transcript of the proceedings on that date, and the order makes no such findings.

Further in this regard, both the trial court and the majority here have erroneously referred to the $400 payments as "rent." This characterization also finds no support in the record * and may explain, in part,

------

* The petition of defendant, and the testimony of plaintiff Rychlik both describe the agreement between the parties as a real

165

why they seemingly overlook the additional equity attaching to the position of a contract purchaser as compared with that of a tenant. That the majority misunderstand the nature of defendant's position and the character of the relief sought by his petition is demonstrated, I believe, by their describing the order of May 29 as having granted "the relief requested by defendant." And this, even though the patent purpose for the filing of defendant's petition was to obtain relief against the writ of restitution, and even though the same order which directed defendant to pay the $800 also ordered him to vacate the premises—the very premises toward the purchase of which the payments were to be applied.

The dignity of the court can neither be achieved nor preserved by punishing for civil contempt a failure to comply with an erroneous order. Actually, the dignity of the court is only incidentally involved in a case of civil contempt where, as here, the order directs the doing of something (e. g., the payment of $800) for the benefit of the other party to the case.* If, as

---

estate purchase contract. The order of May 29 does not use the word "rent," but it is found in the commitment order.

\* "Contempts have been classified as criminal contempts and civil contempts. The former includes acts in disrespect of the court or its process and those tending to bring the court into disrepute or obstruct the administration of justice. Civil contempts have been characterized as quasi-contempts, and consist in failing to do something which the contemner is ordered by the court to do for the benefit or advantage of another party to the proceeding before the court. In such a case the process is civil. (Citing cases.) In this class of cases, while the authority of the court may be said to be incidentally vindicated, its power is called into exercise for the benefit of a private litigant and not in the public interest, merely. If imprisonment is ordered, it is not as a punishment but to the end that the other party to the suit may obtain a remedy for the advancement of his own private interests and rights which he could not otherwise procure." Wilson v. Prochnow, 359 Ill 148, 151, 194 NE 246.

166

seems obvious to me, the party intended as the beneficiary of the order was not entitled to the relief directed, then failure of compliance would injure nobody. This is an equity proceeding (Ellman v. De Ruiter, 412 Ill 285, 106 NE2d 350), and it is inequitable for the court to punish only for its own injured dignity when it had no authority to enter the order in the first place. The character of civil contempt being at once remedial or coercive as well as punitive, if the remedy ordered is lacking in authority, then, in all good conscience, the punitive feature must also fall. It is only in matters of criminal contempt that the court may properly take punitive action against conduct directed against the authority and dignity of the court. (People v. Gholson, 412 Ill 294, 298, 106 NE2d 333.) And there is no claim that criminal contempt is involved in the case at bar.

In People v. White, 8 Ill App2d 428, 131 NE2d 803, a civil contempt case, the point was made by the defendant that when the court directs the doing of an act for the benefit of the opposing party, it must be obeyed under pain of contempt, even though the court might be in error. The argument, however, met with unsympathetic reception in this court which reversed the contempt conviction upon finding that the original order had erroneously directed the act in question. For a similar result see also People v. Mulliken, 41 Ill App2d 282, 190 NE2d 502.

Even if there had been a default of $800 at the time of the May 29 order; and even if there had been a proper pleading seeking judgment therefor; and even if judgment had then been entered against defendant for $800, his failure to pay it, without more, would not have amounted to contempt of court. The court found that defendant owed plaintiffs $800 (or would by June 30), but such an order to pay could only have been predicated upon a debtor-creditor relationship.

167

There is not even any suspicion in the record that a trust relationship of any kind then existed between the parties or was about to come into being. The basis for the order was a simple debt—two monthly payments under a real estate purchase contract. In my opinion the commitment order does, therefore, amount to imprisonment for debt. The court was without authority to elevate the contract debt to any higher plane of obligation, with a jail penalty for default, without a great deal more of a showing than is contained in this record.

One of the key essentials to such a showing is that the debtor has the money to pay, or had the money and wrongfully disposed of it. I quote from Tudor v. Firebaugh, 364 Ill 283, 287, 4 NE2d 393, in which the Supreme Court said:

> The power of a court of equity to punish for contempt by imprisonment upon the refusal of a trustee to pay over money actually received and wrongfully withheld is well established. (People v. LaMothe, 331 Ill 351; Chew's Appeal, 44 Pa 247; In re Meggett, 105 Wis 291, 81 NW 419.) It is no defense in such case that the fund has been devoted to other purposes. (People v. Zimmer, 238 Ill 607; Rudd v. Rudd, 184 Ky 400, 214 SW 791; Jastram v. McAuslan, 29 RI 390; 71 A 454; Wise v. Chaney, 67 Iowa 73, 24 NW 599.) However, section 12 of article 2 of the constitution provides that "no person shall be imprisoned for debt, unless upon refusal to deliver up his estate for the benefit of his creditors, in such manner as shall be prescribed by law, or in cases where there is strong presumption of fraud." In the enforcement of this constitutional provision every doubt should be resolved in favor of the liberty of the citizen. No one should be imprisoned for a

failure to pay money unless the evidence clearly shows that the party charged has the money within his power to pay, or that he had the money and wrongfully disposed of it. Courts may imprison for willful defiance, but they will not imprison for a failure to comply with a decree where the disobedience is not willful. (Citing cases.)

More recently this court affirmed those principles in Shatz v. Paul, 7 Ill App2d 223, 240, 129 NE2d 348, where we said:

The courts in modern times have shown a tendency to modify the rigors of the law relating to imprisonment. It has been held that where a trustee or receiver refuses to pay over money actually received and wrongfully withheld, a court of equity has no power to imprison such receiver or trustee unless it is clearly shown by the evidence that he has the money to pay or had it and wrongfully disposed of it.

See also Meaden v. W. J. Anderson Corp., 301 Ill App 390, 396, 23 NE2d 74.

In the case at bar there is no evidence or finding that defendant had the money to pay the $800 ordered, or that he had had the money and disposed of it wrongfully to avoid paying. Quite the contrary is true. The only evidence was defendant's own testimony that he did not have the money. The majority say that defendant had the burden of introducing more explicit evidence to this effect before it could be considered that he had established his inability to pay. I don't agree, and I believe that the cases cited in the majority opinion, Harrigan v. Stone, 237 Ill App 314, and People v. Zimmer, 238 Ill 607, 87 NE 845, are not apropos. Those two cases deal, respectively, with the administrator of an estate who refused to surrender specific

property which he had in his possession as administrator, and the receiver of a dissolved partnership who refused to account for assets of the partnership officially in his possession as receiver. Both defendants were acting as officers of the court, and each refused to pay, not a mere money judgment, but specific funds or assets entrusted by court order to their possession. Because of their relation to the court and their position as fiduciaries, they were held to a much higher degree of accountability than that of a mere judgment debtor.

On the other hand, there are a great many cases in which contempt orders have been reversed because it did not appear that the defendant had the money or had wrongfully disposed of it. In Mueller v. Van Driessche, 236 Ill App 420, 424, after an execution was levied, the judgment debtor, brought into court in citation proceedings, agreed to an order that she pay a certain amount per month, and on her failure to pay this amount, she was held in contempt for disobeying the order. As in the case at bar, the only evidence was the testimony of defendant to the effect that she had no money. In reversing, this court quoted from Blake v. People, 80 Ill 11, 14, where the Supreme Court said: ". . . a party may not be imprisoned except in cases where it shall appear he has the pecuniary ability to enable him to comply with the decree, and his disobedience is wilful."

In People v. Cohen, 163 Ill App 115, 120, an order directing the defendant to pay $30 was held invalid, and a contempt order for failure to pay was reversed by this court, because "it does not appear plaintiff in error had the $30 in her possession or under her control at the time the order was entered." The same result was reached in a case involving failure to pay alimony. Mueller v. Mueller, 202 Ill App 116.

In the case at bar, the trial court, curiously enough, appeared to be convinced of defendant's inability to

pay, because, after discussing the circumstantial evidence of damage to the premises, the court made this statement at the time:

> People have gone to jail on this type of evidence, even less evidence than this, and this man is going to jail unless he offers some plan for clearing himself of this, and the only thing he can do is restore the property to the condition to which it was prior to the time of the damage, and that will take a substantial amount of money, *and if he can't raise $400, if he can't raise $400 to pay two months' rent, he isn't going to be able to raise enough money;* unless he can assure me he can take care of these damages on the basis of this, I'll send him to jail and not impose a fine. (Emphasis supplied.)

This comment by the trial judge also indicates that he appeared to be interested principally, if not entirely, in punishing defendant for the damage done to the premises. The sole subject-matter of the "double or nothing" lie detector test was the damage to the premises, and, in directing the taking of the test, the court said further:

> . . . if it indicates that you have been telling the truth, and that you had no part in this at all, not necessarily—it isn't a question of whether you did it or not, but that it wasn't done with your knowledge or with your consent or under your direction, that you knew absolutely nothing about it—if the lie detector test bears that out, I think I would be justified in saying that I was mistaken, and will not hold you in contempt.
>
> However, if the lie detector shows that you are not telling the truth about it, then you will serve 60 days in the County Jail.

171

I believe that the polygraph is a remarkable instrument which has many useful purposes, but, in my opinion, the manner in which it was employed in this case was improper. Lie-detector results have not yet reached the point of scientific certainty which would render them admissible in evidence. A fortiori, then, they may not be used by the court to justify abdicating its function of decision, especially when a man's liberty is involved.

Now, as a result of this court's decision, defendant will be faced with the prospect of spending 60 days in jail for failure to pay money which the record shows he did not have.* And we are not warranted in assuming that he will be able to pay the money to effectuate his release sooner. The 60-day maximum period was obviously fixed by the trial court in relation to the magnitude of the damage done to the premises. That phase of the contempt order has properly been reversed by our decision, but the 60-day commitment provision still stands. This, to me, is unconscionable.**

I would reverse the order in its entirety.

---

* Unless the sheriff lets him out sooner. The mittimus specifically ordered by the court was "for a period of sixty (60) days for a period of thirty (30) days," etc.

** Bearing interestingly on this point is the following colloquy between plaintiffs' attorney and the trial judge, after the latter had announced his "double or nothing" lie-test ruling as to the property damage:

Mr. Downing: In so far as this $800 which was ordered by this court to be paid, that has not been paid, and in our opinion, it is still contemptuous of this court's order.

The Court: But my 30 days would be reduced to some extent, if it's merely a question of the money.