Marion G. Wilson, Executrix of the Estate of William Garnett, Deceased, Appellee, v. Raymond E. Prochnow, Appellant.

Gen. No. 38,249.

Opinion filed March 26, 1936. Rehearing denied and opinion modified April 7, 1936.

ALTHEIMER, MAYER, WOODS & SMITH and WILLIAM F. STRUCKMANN, all of Chicago, for appellant.

THOMAS G. VENT, of Chicago, for appellee.

MR. PRESIDING JUSTICE HALL delivered the opinion of the court.

This is an appeal by Raymond E. Prochnow from an order of the circuit court of Cook county, sustaining the demurrer of Marion G. Wilson, executrix of the estate of William Garnett, deceased, to Prochnow's petition to be released from imprisonment in the county jail, and from an order dismissing his petition and awarding costs.

On May 24, 1932, a decree *nunc pro tunc* as of May 23, 1932, was entered in the circuit court of Cook county after a trial *de novo* in that court, on an appeal

from the probate court, in the matter of the estate of William Garnett, deceased, of which estate Marion G. Wilson is now and was at the time of the entry of said decree, executrix. In this decree it is recited *inter alia* that the court had examined Raymond E. Prochnow, the petitioner here, in open court under oath, and had heard and examined evidence, oral and documentary, offered and received in said circuit court in the matter of a petition and citation issued against Prochnow. The court found among other things, that in the year 1922 Prochnow became a member of an incorporated firm, known as Borregaard, Prochnow & Co., and that thereafter he acquired the interest of certain other persons in such corporation, and in January, 1926, changed the corporate name to Raymond E. Prochnow & Co., Inc.; that Prochnow owned all the common stock, except a few shares owned by his brother and his wife, and that he owned all the preferred stock, except 57 shares thereof which he sold to William Garnett, now deceased; that Prochnow, either personally, or as a member of this firm, was a dealer in bonds, and that Garnett transacted business with Prochnow from the year 1921 until July 13, 1930, the date of Garnett's death, at which time Garnett was upwards of 73 years of age. In this decree, after reviewing in detail the transactions between Prochnow and Garnett, and the certain lists of properties belonging to Garnett, which the court found Prochnow had appropriated to his own use, the court ordered that Marion G. Wilson, as such executrix, recover from Prochnow the sum of $30,280.61, together with certain bonds and stocks and other evidences of indebtedness, the property of Garnett, deceased, held by Prochnow, within 20 days from and after the date of the decree, and that in default thereof, Prochnow be committed to the county jail of Cook county and State of Illinois, until he should comply with the order and decree of the court. The order

further contains the following provision: "And jurisdiction of this cause and proceeding hereby is expressly reserved so that this order and decree may be made effective."

On June 18, 1932, a supplemental decree in the cause was entered, wherein the court found that the assets belonging to the said estate had been concealed, converted or embezzled by Prochnow; that more than 20 days had elapsed since the entry of the final decree; that Prochnow had failed to make payments and deliver the securities prior to the date of the decree, as originally entered, and had failed to comply with the provisions of the decree either in whole or in part; that he had not presented or filed an appeal bond for the approval of the court wherewith to effect an appeal, and that the decree and order had become final. In this supplemental decree it was ordered "that a body attachment or capias be forthwith issued herein to attach the body of said respondent, Raymond E. Prochnow; and that a mittimus forthwith issue for said Raymond E. Prochnow, and that he be committed to and confined in the county jail in and for said county of Cook and State of Illinois until he shall comply with said final order and decree of this court, as by said statute, Illinois Revised Statutes, chapter 3, sections 81 and 82, made and provided; and jurisdiction of the cause and proceeding hereby is expressly reserved so that said final order and decree and this supplemental decree may be made effective." After the entry of this decree, and on March 30, 1933, Prochnow filed a verified petition in the circuit court of Cook county in the nature of a writ of error *coram nobis* of various matters which had been adjudicated by the court in the decree entered May 24, 1932, and asked that the orders of the circuit court hereinbefore referred to be set aside and vacated. Opposition thereto was presented by the executrix, and the prayer of the petition was

denied. Thereafter Prochnow sued out from the Supreme Court a writ of error to review the alleged error of the circuit court, and that court, finding no question involved which would give it jurisdiction on direct review, transferred the cause to the Appellate Court of the First District. After a hearing in the Appellate Court, this court affirmed the circuit court (*Wilson v. Prochnow*, 275 Ill. App. 629 [Abst.]) and in order that a complete understanding may be had of the issues involved here, the opinion of this court in that proceeding is set forth in full, as follows:

"This cause was before the Supreme Court of Illinois upon a writ of error, which court transferred the cause to this court for the reason that in order to warrant a direct appeal to the Supreme Court, the validity, and not merely the construction, of a statute must be involved. *Wilson v. Prochnow*, 354 Ill. 98.

"The defendant Raymond E. Prochnow was committed to the County Jail of Cook County by virtue of certain orders entered by the Circuit Court of Cook County in a proceeding there tried upon appeal from an order entered in the Probate Court of Cook County, which proceeding was originally instituted under secs. 81 and 82 of Chap. 3 of an act entitled, 'Administration of Estates.' Cahill's Ill. Rev. Stats. 1933, Sec. 81, is in part as follows:

" 'If any executor or administrator, or other person interested in any estate, shall state . . . that he believes that any person has in his possession, or control, or has concealed, converted, or embezzled any goods, chattels, moneys or effects, books of accounts, papers or any evidences of debt whatever, or titles to lands belonging to any deceased person or the executor or administrator, or the estate of any deceased person . . . the court shall require such person to appear before it by citation and 'may examine him on oath . . . and make such order in the premises as the case

may require. . . . ' Sec. 82 provides for the commitment of a person and the enforcement of judgment recovered against a person under the act for failure to pay, and is substantially as follows:

" 'If such person . . . refuses to deliver up such property or effects, or in case the same has been converted, the proceeds or value thereof, upon a requisition being made for that purpose by an order of the said court, such court may commit such person to jail until he shall comply with the order of the court therein. . . .'

"The executrix of the Estate of William Garnett, deceased, filed a statement under oath, as provided by sec. 81, and thereupon a citation was issued, and the defendant Raymond E. Prochnow responded and was examined in the Probate Court, and again in the Circuit Court of Cook County. Certain findings of fact appear in the order entered by the court in the cause.

"On March 30, 1933, Prochnow, upon motion, obtained leave to file his verified petition in the nature of a writ of error *coram nobis,* setting up the condition of the record in the instant case, and requesting that the commitment order entered without jurisdiction confining the defendant in the County Jail be vacated, and that the prayer of the petition be granted. To this petition, the attorney for the estate presented to the court his counter affidavit, and upon the face of the pleading, the motion of the defendant was denied.

"From the petition it appears that the petitioner had been confined in the County Jail for more than six months, pursuant to the order of the Circuit Court entered in a supplemental decree. It also appears from the petition that Raymond E. Prochnow appeared in court, and as a witness was questioned regarding certain exhibits; that the petitioner was not present when the decree was entered by the court on May 24, 1932, and had no knowledge that the decree had been entered

until after the time had expired in which to file a certificate of evidence; that his attorney endeavored to obtain a transcript of the evidence, but was refused the same by the court reporter who appeared in court and reported the proceedings by her shorthand notes; that he was also refused a transcript by the attorney of the estate, who informed petitioner's attorney that the shorthand notes were destroyed by his order, and that the attorney for the estate did not have a copy thereof in his possession.

"It is also stated in the petition that Raymond E. Prochnow was in the County Jail and received no notice of the move to obtain a supplemental decree; that if given an opportunity to be heard, he would have presented a meritorious defense. It is also stated in the petition that at the time of the filing of said petition and at the time of the proceedings, and at all times since, he had no property or income, and was the owner merely of the clothes upon his back and a few personal belongings not exceeding $25.00 in value, and that his wife and children were dependent upon relatives and charity for support.

"It also appears from the petition that there were several accounts appearing in the decree entered in this cause, which for convenience are designated by the attorney for the petitioner as 'Trading Account,' 'Holmes Deal,' and 'Collateral Account.'

"It appears from the petition that the finding of the court as to what is designated 'Trading Account,' is in part as follows: That in the year 1916 said Raymond E. Prochnow, the petitioner, was a salesman for the investment firm of E. Naumberg & Company; that in August, 1925, Raymond E. Prochnow acquired the interest of Knud C. Borregaard, and in October, 1925, he acquired the interest of Louis E. Borregaard; that on January 1, 1926, he changed the name to R. E. Prochnow & Company, Inc., that Prochnow owned all of the

common stock, except a few qualifying shares held by his brother; that he also owned all the preferred stock, except 57 shares which he sold to William Garnett; that R. E. Prochnow & Company, Inc., is and always has been the personal corporation of said Raymond E. Prochnow, and except for said 57 shares of preferred stock sold to William Garnett, is strictly a 'family affair'; that all of the transactions were conducted by said petitioner in his own behalf and were in fact his personal transactions; that said Raymond E. Prochnow was a dealer in bonds and, as such, transacted business with and for the decedent, William Garnett, continuously from the year 1921 to the date of his death on July 13, 1930, at the age of 74 years; and

"That Raymond E. Prochnow reported by letter to the decedent, William Garnett, in his lifetime, that they held for him in safe-keeping $3,000 Washington Coast Utilities Company 6 per cent bonds, $2,000 Yadkin River Power Company 6 per cent bonds, and $3,000 Market Street Railway Company 7 per cent bonds; that on April 23, 1924, a so-called 'trading account' was established, by agreement, whereby the above $5,000 of bonds and $5,000 of other bonds were delivered to said petitioner by said decedent to be placed in a $10,000 'trading account' for said William Garnett; that the bonds in said so-called 'trading account' totaled the sum of $9,767.30; that the terms of this agreement were that the above $10,000 of bonds would be placed by petitioner in a 'trading account' for the decedent, William Garnett; that these or equivalent bonds would be returned to him and that, in the meantime, said Garnett would receive from the petitioner a check for $60 each month on the 23d day of the month, commencing May 23, 1924, until December 23, 1924, and that it was agreed by Raymond E. Prochnow that 'the above bonds, or any others traded therefor are held in a separate package marked with William Garnett's name'; and thereafter said 'trading account' was

extended six months and the petitioner wrote to William Garnett that—

" 'In accordance with our conversation, the plan is hereby extended for six months, until June 23, 1925, and will be in full force until that date, when we will turn over to you $10,000 par value of bonds; in the meantime, you will receive, on the 23d day of each month, a check for income in the amount of $60, as heretofore.'

"That instead of holding said bonds in a separate package marked with William Garnett's name, petitioner testified that immediately after these $10,000 bonds were received they were mixed with their own inventory of bonds on hand, although accountants employed by claimant could find no record whatever of this 'trading account' on the books of petitioner's company.

"It also appears from the decree referred to in the petition of Raymond E. Prochnow that Raymond E. Prochnow testified that William Garnett gave him a note for $8500, dated March 8, 1924, which was offered in evidence in the Circuit Court, and that on June 23, 1930, William Garnett wrote petitioner a letter that—

" 'We agree between us that the so-called "Trading Account" which pays $60 per month shall cease to-day—this also cancels my note for $8500 held by you.'

"The court in said decree further found that the alleged letter was a false, fraudulent and forged document, and that the signature purporting to be the handwriting and signature of William Garnett was not his signature, and that the document was a fraudulent and forged instrument. It also appears from the finding that Prochnow testified that on April 25, 1924, the day after he received the $10,000 of bonds to place in said 'trading account,' he sold them on the open market, and obtained therefor $9,955.00, and that Prochnow converted the proceeds to his own use.

"With reference to what has been designated the 'Holmes Deal' it appears from the decree that the petitioner Raymond E. Prochnow, proposed to William Garnett, that each of them should furnish $6,000 par value of bonds on a so-called 'special deal'; that Prochnow would then borrow $10,000 to give to an unnamed New York stock market operator, whose name was not made known to Garnett, to be used by the petitioner for 'organization purposes,' to buy 31 shares of stock from said New York stock operator, Prochnow to have one-half and Garnett to have one-half, and that Prochnow and Garnett were to receive out of this New York Stock market operator's earnings, a sum equal to the amount they had advanced, and, in addition, as a bonus an interest in this company for five years, this bonus to be roughly in the nature of 1,000 shares of stock in this New York operator's company, when he formed it.

"It also appears from the finding of the court in the decree that as William Garnett's part of the transaction, he should and, on September 3, 1929, did furnish to Raymond E. Prochnow certain bonds, of the par value of $6,000, specially selected by Raymond E. Prochnow, because there was 'the least likelihood of any of these bonds being called, having a very high call price or in some cases being uncallable.'

"It also appears that not until after Garnett's death did Prochnow allege that this stock market operator's name was Holmes, either J. H. or J. K. he did not know which; that Prochnow did not in fact furnish any bonds or cash of his own in this deal; that on September 3, 1929, the day Prochnow obtained delivery of said bonds from Garnett, Prochnow borrowed the net sum of $4,889.86 from the Continental Illinois Bank and Trust Company, of Chicago, on his personal collateral note for 90 days, and deposited said $6,000 par value of William Garnett's bonds as collateral security therefor.

"It also appears that Raymond E. Prochnow caused said bonds to be sold and the proceeds converted to his own personal use, and no accounting has ever been made to Garnett or his estate; that said bonds and the proceeds thereof remained the property of Garnett and are now the property of his estate.

"It appears from the finding in what is designated as 'Collateral Account' that Prochnow converted bonds of the value of $1,857.93, and that the total conversion value and accrued interest amounts to $2,082.11.

"The name of the bonds and the dates of maturity are specifically described in the finding of the court. It further appears from the decree and is called to the attention of the court by the petition of Prochnow, that he obtained possession, but not title or ownership, from said William Garnett of $16,000, par value, of miscellaneous other bonds which he previously sold to said Garnett, and which have never been returned or accounted for to said Garnett or his estate, and that the total price of the bonds enumerated in the decree is $11,862.00, and from the evidence it appears that Prochnow sold the bonds and the proceeds were used for his personal advantage, and that he did not account to Garnett for the bonds or the money received therefor.

"It further appears from the decree referred to by the petitioner that the judgment order of the court upon which the decree is based, is in words and figures as follows:

" 'It is further ordered, adjudged and decreed, that said petitioner, Marion G. Wilson, do have and recover from said respondent, Raymond E. Prochnow, the sum of thirty thousand two hundred and eighty-two dollars and sixty-one cents ($30,282.61) hereinabove found to be due and owing from said respondent to said petitioner and said estate; also that said petitioner do have and recover from said respondent said two thousand

dollars ($2,000), par value, of General Vending Corporation 10 yr. Sec. Sinking Fund 6% Bonds due August 16, 1937, with August 15, 1930, and all subsequent interest coupons attached thereto, or in lieu thereof, the Receipts of Voting Trust Certificates issued therefor, if any there are, duly assigned to said petitioner; also said three thousand dollars ($3,000), par value, of National Theatres Corporation First and Refunding Mortgage "A" 6½ bonds, comprising bonds Nos. 1576, 1579 and 1580, with June 1, 1930, and all subsequent interest coupons attached thereto, or in lieu thereof, the Depositary Certificate issued therefor, if any there is, duly assigned to petitioner; said sum and said securities being the aggregate of property or the proceeds or value of property belonging to said decedent, William Garnett, and to the estate of said decedent, which said respondent has in his possession, or control, or which he has concealed, converted, or embezzled, and also the costs of this suit or proceeding, and that said petitioner, Marion G. Wilson, Executrix of the Estate of William Garnett, deceased, have execution for said money judgment as upon a judgment at common law against the real and personal property of said respondent Raymond E. Prochnow, as by statute in such case made and provided.'

"Thereafter on June 18, 1932, a supplemental decree was entered, from which decretal order it appears that Marion G. Wilson, Executrix of the Estate of William Garnett, deceased, was to recover from Raymond E. Prochnow the amount converted and due and owing from Prochnow to the said estate.

"There also appears as part of the decretal order the following:

" 'It is further Ordered, Adjudged and Decreed, that said respondent, Raymond E. Prochnow, be and he hereby is ordered and required to pay over and deliver unto said petitioner, Marion G. Wilson, Execu-

trix of the Estate of William Garnett, deceased, or to Thomas G. Vent, Esq. her counsel, said sum of thirty thousand two hundred and eighty-two dollars and sixty-one cents ($30,282.61); said two thousand dollars ($2,000), par value of General Vending Corporation 10 Yr. Sec. Sinking Fund 6% bonds due August 16, 1937, with August 15, 1930, and all subsequent interest coupons attached thereto, or in lieu thereof, the Receipts or Voting Trust Certificates issued therefor, if any there are, duly assigned to said petitioner; and said three thousand dollars ($3,000), par value, of National Theatres Corporation First and Refunding Mortgage "A" 6½% bonds, comprising bonds Nos. 1576, 1579 and 1580, with June 1, 1930, and all subsequent interest coupons attached thereto, or in lieu thereof, the Depositary Certificate issued therefor, if any there is, duly assigned to petitioner, all within twenty (20) days from and after the day and date hereof, or that, in default thereof, said respondent, Raymond E. Prochnow, be committed to the County Jail in and for said County of Cook and State of Illinois, until he shall comply with said order and decree of this court; and jurisdiction of this cause and proceeding hereby expressly reserved so that this order and decree may be made effective.

" 'From the entry of this decree said respondent hereby prays an appeal to the Supreme Court of the State of Illinois, which appeal is hereby allowed, upon an appeal bond with good and sufficient surety in the penal sum of forty-five thousand dollars ($45,000.00), being approved by this court and filed herein within twenty (20) days from and after the date hereof, and a certificate of evidence to be signed and sealed by the court and filed herein within sixty (60) days from and after the date hereof.

" 'And the court having read said petition and being fully advised in the premises doth find that, although

more than twenty (20) days have elapsed since the entry of said final decree, said respondent, Raymond E. Prochnow, has failed to make the payments and to deliver the securities required of him in said decree, and has failed to comply with the above and foregoing provisions of said decree, either in whole or in part; that he has not presented or filed an appeal bond for the approval of this court wherewith to perfect an appeal from said final decree to the Supreme Court of the State of Illinois, as provided for in said decree; and that said decree, order and judgment has, therefore, become final and absolute as against said respondent.'

"And finally it was ordered by the court that a body attachment or capias be forthwith issued to attach the body of Raymond E. Prochnow; that a mittimus issue, and that he be committed to and confined in the County Jail until he shall comply with the order of the court.

"The petitioner contends that from the decree it is apparent that the relationship which existed between Prochnow, or his Company, and Garnett was that of a creditor and debtor, and therefore the court was not within its jurisdiction to enter the decree and in support of this contention, cites the case of *Johnson v. Nelson*, 341 Ill. 119, wherein the court in its opinion said:

" 'The power to determine questions of title and rights of property and to enforce by execution orders adjudicating titles or requiring the delivery of property, added to sections 81 and 82 by the amendatory act, does not include jurisdiction of the ordinary action for the recovery of money the title to which is in the debtor. Where the relation of debtor and creditor arises for money lent, the debtor owns the money and is indebted to the creditor for it, and consequently the debtor has no money belonging to the creditor, or to the latter's estate, in his possession. To enforce col-

lection of the indebtedness in such case, by the rendition of a personal judgment against the debtor, was not within the scope of sections 81 and 82 prior to July 1, 1925, and no such power was conferred by the amendatory act, either expressly or by implication.'

"However, it is important to consider further what was said by the Supreme Court in its opinion as to the recovery by the executor or administrator of such estate of specific property of a deceased person, its proceeds or value, that has been converted. The court said:

" 'The amendments to section 81 enlarged its provisions to include property belonging to "the executor or administrator or the estate of any deceased person" and conferred upon the court the power to determine, upon trial by jury if demanded by either party, questions of title and rights of property. Notwithstanding these additions, the purpose of the section as amended, apart from the recovery of books of account, papers or instruments of title, and the obtaining of information, is to recover possession of specific property, or if converted its proceeds or value. Section 81, as now in effect, contemplates that the testate or intestate, at the time of his death, held or at least claimed, and that the executor of his will or the administrator of his estate, since his death, either in succession or initially, holds or claims, the title to the property of which possession is sought.'

"The findings of fact complained of by the petitioner come clearly within the statute in question. Throughout the final decree entered in the proceeding by the Circuit Court of Cook County, the petitioner was charged with possession of the stocks and bonds enumerated in the findings of fact as being the property of William Garnett, deceased, and that without the consent of Garnett in his lifetime Prochnow converted the stocks and bonds by transfer or sale, and the funds

so derived, to his own use, and the action in the Probate Court, as well as in the Circuit Court, is well within the act to recover personal property owned by Garnett, or its converted value by the petitioner in this form of action.

"The court has examined the questions called to the attention of the court, and are of the opinion that the proceeding before us is but an effort by Prochnow to have reviewed the findings of fact of the trial court. If a review was desired it should have been taken by appeal, or upon a writ of error to the court having jurisdiction of the cause. *Chapman v. North American Ins. Co.*, 292 Ill. 179. The question involved in the petition of Prochnow is solely upon the ground set forth in the petition, and the facts contained in the petition are not related to a fact which was unknown to the trial court, and which, if known, would have precluded rendition of judgment. *Cramer v. Commercial Men's Ass'n*, 260 Ill. 516. It therefore must appear that the error of fact within the meaning of Sec. 89 of the Practice Act, which is substituted for the writ of error *coram nobis*, (Cahill's Ill. Rev. Stats.) was not a part of the issue tried, and that the fact must be of such a nature as would conclusively prevent the entry of a judgment. *Estate of John C. Gould v. Watson*, 80 Ill. App. 242. There is no statement of fact appearing in the petition that would meet this rule, nor is there an error in fact which would entitle the petitioner to have the alleged error considered by the court for the purpose of setting aside the order complained of. The petitioner complains that his petition filed for relief was denied solely upon the petition itself and counter-affidavits offered by the attorney for the estate, and the court, not having heard evidence, erred in denying the motion. It is the uniform rule that courts may determine a petitioner's motion based upon a verified petition and counter-affidavits in opposition

thereto without further hearing of evidence by the court and a jury. The court, therefore, did not err in so disposing of the motion. *Domitski v. American Linseed Co.*, 221 Ill. 161; *Consolidated Coal Co. v. Oeltjen,* 189 Ill. 85.

"There is a further contention to be considered, and that is the contention of the petitioner that a supplemental decree was entered without jurisdiction and is void because an appeal was perfected from the decree by Marion G. Wilson, Executrix of the Estate of William Garnett, deceased, and that such appeal was perfected before the entry of the supplemental decree in this cause.

"It appears from the condition of the appeal bond that the appeal is from the decree entered by the court, denying certain items and certain portions and amounts of the claim of Marion G. Wilson, Executrix, against Raymond E. Prochnow. The condition of the bond contains no reference to any portion of the decree, except the denial of allowance of certain items of her claim. *Smyth v. Stoddard,* 203 Ill. 424, and the appeal being from the portion of the decree denying her affirmative relief, the balance of the decree is unaffected and in full force and effect."

Thereafter, Prochnow sued out a writ of error from the Supreme Court to review the judgment of the Appellate Court, which writ of error was dismissed by the Supreme Court, and in its opinion (*Wilson v. Prochnow,* 359 Ill. 148), after referring to sections 81 and 82 of the Administration of Estates Act referred to in the quoted opinion of this court, the Supreme Court said:

"Contempts have been classified as criminal contempts and civil contempts. The former includes acts in disrespect of the court or its process and those tending to bring the court into disrepute or obstruct the administration of justice. Civil contempts have been

characterized as quasi-contempts, and consist in failing to do something which the contemner is ordered by the court to do for the benefit or advantage of another party to the proceeding before the court. In such a case the process is civil. (*Hake v. People,* 230 Ill. 174; *Holbrook v. Ford,* 153 id. 633.) In this class of cases, while the authority of the court may be said to be incidentally vindicated, its power is called into exercise for the benefit of a private litigant and not in the public interest, merely. If imprisonment is ordered, it is not as a punishment but to the end that the other party to the suit may obtain a remedy for the advancement of his own private interests and rights which he could not otherwise procure. *People v. Elbert,* 287 Ill. 458; *O'Brien v. People,* 216 id. 354; *Loven v. People,* 158 id. 159; *People v. Diedrich,* 141 id. 665; *Crook v. People,* 16 id. 534.''

In the instant proceeding which is now the subject of this court's consideration, a petition was filed by Prochnow in the circuit court of Cook county on February 20, 1935, in which he recites, *inter alia,* the fact of the issuance of a mittimus under which he is now confined in the county jail under the order of the Circuit Court, and that he has been so confined since May 14th, 1934, and states that ''your petitioner at one time prior to the entry of the decrees and order aforesaid had been in the possession of said bonds. Your petitioner at the time of the entry of said decrees and order aforesaid was not in possession or control of said bonds and said bonds have not since that time been in his possession or control, nor have they been in the possession or control of any other person or persons for your petitioner. Your petitioner has no knowledge of the whereabouts of said bonds and he does not know who now claims ownership thereof. Your petitioner has not now and since the entry of said decrees and order has not had in his possession

or control, either directly or indirectly, in his own hands or in the hands of any person or persons for him, any assets of any kind belonging to the estate of the said William Garnett, deceased. Your petitioner is unable to procure any funds on credit or otherwise with which he might be enabled to comply with the decrees and order of this court, and your petitioner is unable to comply with said decrees and order. If your petitioner shall continue to be detained and imprisoned he will not be able to earn any money and he will therefore, so long as he shall be so detained and imprisoned be unable to make any payment on account of the decrees or order entered against him. Unless your petitioner shall be ordered discharged from said detention and commitment, he will be kept in confinement during the rest of his natural life. Wherefore, your petitioner prays that said Marion G. Wilson, executrix of the estate of William Garnett, deceased, may be required to answer this petition, but not under oath, under oath being hereby expressly waived, and upon a final hearing of this petition and the answer thereto, a decree or order may be entered herein finding the total amount now due from the petitioner to said estate and that a money decree be entered accordingly, and that the decrees and order committing this petitioner to jail be vacated and that the commitment and attachment heretofore issued be withdrawn and the petitioner discharged from the custody of the Sheriff of Cook County, and that the petitioner may have such other relief as the court may determine to be just, and the petitioner shall ever pray, etc.''

To this petition a special demurrer was filed by Marion G. Wilson, executrix of the estate of William Garnett, deceased. The court entered an order sustaining the demurrer and dismissing the petition, and in such order found, among other things, that ''this court is without jurisdiction to set aside, vacate, modi-

fy or annul the decrees and orders entered herein at the May Term, A. D. 1932 of this court, or to grant the relief or any part or portion thereof as prayed for in said petition, and that said demurrer is well founded in point of law and should be sustained."

The principal ground upon which Prochnow seeks his discharge, as set forth in his petition, is that notwithstanding the ascertained fact that he embezzled and appropriated to his own use a large amount of property belonging to the estate of William Garnett, deceased, and which he has failed and refused to turn over to the personal representative of the estate, the fact is that he is bankrupt, without funds, and is totally unable to comply with the order of the court. In his brief filed here, it is admitted that the following facts are established by the orders and decrees of the circuit court, all of which have been affirmed on review: (1) That Prochnow converted to his own use certain assets of William Garnett, deceased. (2) That among the assets so converted were certain securities, the value of which, including interest, was ascertained by the circuit court at the time of the entry of the decree of May 24, 1932, to be $30,280.61. (3) That judgment was entered for this amount in favor of the executrix and against Prochnow, and execution ordered, and that such judgment remains fully unpaid. (4) That in addition to the assets so converted, Prochnow has not accounted for certain bonds belonging to the Garnett estate. (5) That these bonds, at the time of the entry of the decree of May 24, 1932, were either in Prochnow's possession, or in his control, or had been concealed by him, converted by him, or had been embezzled by him. (6) That Prochnow at the time he was committed to jail, had not paid the money judgment, and had not restored the bonds.

It is claimed by the petitioner, and it is admitted by the demurrer, that Prochnow has not now and since

the entry of the orders and decrees of the circuit court has not had in his possession or control either directly or indirectly in his own hands or in the hands of any person or persons for him, any assets of any kind belonging to the estate of William Garnett, deceased; that at the time of the entry of the orders and decrees of the circuit court, Prochnow did not have and since that time has not had in his possession or control, nor did any person or persons have in their possession or control any property or assets of any kind belonging to Prochnow in which he either directly or indirectly had any interest whatsoever; that since the entry of said orders and decrees of the circuit court, Prochnow had not disposed of or concealed any property or assets belonging to him either in his own name or in the name of any person or persons for him; that since the entry of the orders and decrees of the circuit court, Prochnow at no time has been able to procure any funds on credit or otherwise with which he might be enabled to comply with the order and decrees of the court. As stated, for the reasons set forth, Prochnow now seeks his release from imprisonment.

In *People v. Zimmer,* 238 Ill. 607, one Zimmer had been appointed receiver of a certain partnership, and as such receiver, had collected a large amount of money for which he failed to account. The court in that case entered an order that Zimmer turn the money over to a person designated, which order Zimmer failed to obey. A rule of the court was entered against Zimmer to show cause why he should not turn over the moneys, as ordered by the court, within a certain fixed time, otherwise, he should be held in contempt of court. In answer to this rule, Zimmer set forth various reasons for his failure to comply with the order of the court, and among others, a statement to the effect that he was insolvent, had no money, and could not, therefore, comply with the order of the court. As to this defense, the Supreme Court said:

"As a further reason why he should not be punished for contempt the receiver stated that he had no money or other property with which he could make the required payment, and it is argued that the court may not properly punish a receiver for contempt in failing to pay over money with which he is properly chargeable, if he does not, in fact, have the means with which to make the payment. In the first place, the receiver's inability is not satisfactorily shown by his answer. That document contains no detailed statement of his affairs, as it should do. His offer to submit to an examination is not less than an impertinence. If he decided to interpose a defense of insolvency, the answer should have been accompanied by such a showing as would, *prima facie,* have rendered an examination unnecessary. Had that showing been so made, the court could then, if it saw fit, have permitted counsel for Dalton to interrogate Zimmer with reference to the statements of the answer. We are satisfied, upon this record, that if Zimmer does not have this money it is because he has disbursed it improperly and unlawfully, when, if the law is as he successfully contended when the case was first in the Appellate Court, he might be called upon to account for it at any time before the cause was finally disposed of in the circuit court. Moreover, where, as here, a receiver has wrongfully converted or expended money in his hands and is proceeded against in the cause in which he was appointed for contempt on account of a failure to comply with an order to pay, inability to pay, resulting from the wrongful act, does not present a defense to the proceeding, and the receiver may be imprisoned for the contempt notwithstanding his inability to pay. *Cartwright's case,* 114 Mass. 230.''

It is to be noted that counsel for Prochnow in this appeal do not cite any Illinois authority upon which to predicate any claim that the bankruptcy or insolvency of Prochnow, or his inability to pay, as alleged,

is any reason alone, for his discharge. As stated, the principal point raised by the petitioner on this appeal is that the court was in error in its finding and holding that the circuit court is without jurisdiction to set aside, vacate, modify or annul the decrees and orders entered in the case at the May term, 1932, or to grant the relief of any part or portion thereof, as prayed for in the petition. On this point, we are unable to agree with the court's finding. As already stated, the proceeding under sections 81 and 82 of the Administration of Estates Act is a summary proceeding, and is brought for the sole purpose of compelling any person having property or effects belonging to the estate of a deceased person, to produce them, and to turn them over to the personal representative of the estate, in this case, the executrix of the estate of William Garnett, deceased. It necessarily follows that the court in attempting to exercise the powers given it by these sections of the act must retain full control over the matter for the purposes noted in the statute. The very language of the act in this regard indicates that this is true. We again call attention to the language of the act to which we refer, which is that "the court *may,* on refusal to comply with such order, commit such person to jail until he shall have complied with the order of the court therein." The only purpose of this provision is to compel a compliance with the court's order, and the court necessarily retains jurisdiction of the entire subject matter for that purpose. The judgment of the circuit court dismissing the petition, is reversed and the cause is remanded with the direction that the court enter such order as is appropriate and is consistent with the views herein expressed.

*Reversed and remanded with directions.*

HEBEL, J., and DENIS E. SULLIVAN, J., concur.